Richard THOMPSON, Appellant,

v.

MEDLEY MATERIAL HANDLING, INC., Appellee.

No. 63273.

Supreme Court of Oklahoma.

Jan. 13, 1987.

Rehearing Denied Feb. 24, 1987.

---

18. See *Chastain v. Parkhurst,* 473 P.2d 239 (Okla.1970); *Weston v. Acme Tool, Inc.,* 441 P.2d 959 (Okla.1968).

Ben A. Goff and Gloyd L. McCoy, Oklahoma City, for appellant.

Holloway, Dobson, Hudson and Bachman by A. Scott Johnson, Oklahoma City, for appellee.

LAVENDER, Justice:

Presented for consideration by this Court on writ of certiorari is the question of the proper burden of proof to be imposed on a plaintiff in a retaliatory discharge action under 85 O.S.1981 §§ 5, 6 and 7.[1]

Appellant, Richard Thompson, initiated this action against appellee Medley Material Handling, Inc., alleging that appellee had wrongfully discharged Thompson from employment for the reason that Thompson had filed a Workers' Compensation claim against appellee. The material presented to the jury in this case indicates that Thompson was injured on the job on August 23, 1982. Thompson filed a claim for Workers' Compensation benefits for this injury. On December 6, 1982, appellee terminated Thompson's employment. Appellee presented evidence to establish that Thompson's termination had been part of a company-wide reduction in staff necessitated by a slow down in the oil industry:

Over Thompson's objection the trial court instructed the jury:[2]

In a civil lawsuit, such as this one, there are requirements as to which party is to prove to you certain things. This is called, "burden of proof."

When I say that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition on which such party has the burden of proof is more probably true than not true.

As applied to this case, you are instructed that the plaintiff has the burden of proof and must prove that the defendant, Medley Material Handling, Inc., ter-

---

1. 85 O.S.1981 § 5, provides:

No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties.

85 O.S.1981 § 6, provides:

A person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

85 O.S.1981 § 7, provides:

The district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act.

2. Instruction No. 3.

minated his employment for the sole reason that the plaintiff had filed a claim under the Oklahoma Workers' Compensation Act.

The jury returned a verdict for appellee and Thompson appealed the judgment rendered on that verdict. The Court of Appeals, Oklahoma City Divisions, affirmed the trial court judgment by Order. Thompson then petitioned this Court for writ of certiorari to obtain review of this case. We have previously granted the requested writ.

### I.

One question is presented for review by the petition for certiorari; that is whether the trial court erred in instructing the jury that Thompson had the burden of proving that the *sole* reason for his discharge was retaliation for exercising his rights under the Workers' Compensation Act. We find that the instruction was erroneous.

■ The statute creating the cause of action for retaliatory discharge, 85 O.S. 1981 § 5, provides that an employee may not be discharged *because* of the exercise of rights under the Workers' Compensation Act. If retaliation plays a significant part in an employer's decision to place an employee among a list of those to be laid off for economic reasons, that employee has been discharged because of the exercise of rights granted under statute. We hold that when retaliatory motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of section 5.[3]

### II.

The import of 85 O.S.1981 § 6,[4] is to place upon the plaintiff in a retaliatory discharge case the burden of proving that retaliation for the exercise of rights granted under the Workers' Compensation Act played a significant part in the employer's decision to terminate that plaintiff.

On appeal appellee has argued that, regardless of error in the instructions, the evidence presented by Thompson fails to present a prima facie case of discriminatory discharge and that a directed verdict should have been entered for appellee. Appellee argues that the evidence, when taken in the light most favorable to Thompson, fails to establish that the filing of the Workers' Compensation claim had any effect upon appellees' decision to terminate Thompson. We are compelled to agree.

■ Although the evidence relied upon to prove wrongful discharge must, in most cases, of necessity be circumstantial in nature, that evidence must have sufficient probative value to constitute the basis for a legal inference rather than mere speculation, and the circumstances proved must lead to the conclusion with reasonable certainty and probability.[5] Thus the evidence required to be offered by Thompson in this case would have to establish circumstances which would give rise to a legal inference that his discharge was significantly motivated by retaliation for his exercise of statutory rights.

■ Thompson's testimony can be summarized as stating that he suffered a compensable back injury in August. He was subsequently off work for the next month during which time he received his pay. When he resumed work the back injury interfered with the performance of his job which was long haul trucking. His inability to perform his job led to a dispute with his supervisors. Thompson characterizes the dispute as harassment in an attempt to either drive him off, or to force him to perform his job, or to take a cut in pay. When Thompson requested written confirmation of what appellee wanted to do with him, he was offered a letter which stated

---

**3.** See *Goins v. Ford Motor Co.,* 131 Mich.App. 185, 347 N.W.2d 184 (1983); and see also *Santex, Inc. v. Cunningham,* 618 S.W.2d 557 (Tex. Civ.App., 1981).

**4.** Supra, note 1.

**5.** *Downs v. Longfellow Corp.,* 351 P.2d 999 (Okla.1960).

two options. The first allowed him to work as a short haul truck driver, the second as a light truck driver with building maintenance duties. The second option included a reduction in pay. Both options stated that the duties were to last for six weeks and that the options were offered in response to reports from Thompson's physicians. Contemporaneously with the request for the written document Thompson filed an action in the Workers' Compensation Court. He testified that the supervisors' attitude then worsened. Approximately six weeks later Thompson was laid off and was told that the reason was lack of work. Thompson subsequently filed an application for unemployment compensation which reflected that he had been laid off for lack of work. Thompson testified that he had subsequently seen a person employed as a mechanic performing his old duties as a long haul trucker, and that this mechanic had at one time quit and had come back subsequent to Thompson's employment.

Taking this testimony in the light most favorable to Thompson it fails to do anymore to connect his termination to the filing of the Workers' Compensation claim than to establish that the two events happened approximately six weeks apart. He does not even allege that his supervisors or others at any time made any reference regarding termination as a result of bringing the Workers' Compensation action.[6] From the evidence presented nothing can be legally inferred. The reasons for Thompson's discharge, other than those stated by appellee, could only be deduced by pure speculation. Such evidence could not support the presentation of the matter to a jury.[7] To hold otherwise would be to require any employer laying off a worker who has at any time in the past filed a Workers' Compensation action to submit to a jury trial based purely on the coincidence of the layoff and the past filing.

Because we find in this case that the evidence here should not have been submitted to the jury and that a verdict should have been directed for appellee we find no prejudice to Thompson resulting from the erroneous instruction.[8] Accordingly, the Order of the Court of Appeals, Oklahoma City Divisions, is VACATED. The judgment of the trial court is AFFIRMED.

HODGES, SIMMS, OPALA, KAUGER and SUMMERS, JJ., concur.

ALMA WILSON, J., with whom DOOLIN, C.J., joins, concurs in part, dissents in part.

HARGRAVE, J., dissents.

ALMA WILSON, Justice, concurring in part and dissenting in part:

I concur in Part I of the Court's opinion. If retaliation plays a significant part in an employer's decision to place an employee among a list of those to be laid off for economic reasons, that employee has been discharged because of the exercise of rights granted under 85 O.S.1981 § 5.

I, however, disagree with the majority's conclusion that the evidence *taken in a light most favorable to the non-moving party*, here Thompson, fails to establish a prima facie showing of retaliatory discharge, but rather concludes that Thompson's claim for worker's compensation benefits had *no effect* upon the decision to terminate Thompson's employment. Upon a prima facie showing, it was within the province of the jury to decide the propriety of the evidence presented. The trial court thus did not err in overruling the demurrer to the evidence.

---

**6.** Cf. *Henderson v. St. Louis Housing Authority*, 605 S.W.2d 800 (Mo.Ct.App.1979). (Where court found a prima facie case based on assertion that supervisor had made comment tying discharge to compensation claim.)

**7.** *Mitchell v. St. Louis County*, 575 S.W.2d 813 (Mo.Ct.App.1978); and see also *Brewster v. C.H.*

*Liebfried Mfg. Corp.*, 65 A.D.2d 162, 411 N.Y.S.2d 413 (1978).

**8.** See *Continental Casualty Co. v. Beaty*, 455 P.2d 684 (Okla.1969); *Whitehead v. Erle P. Halliburton, Inc.*, 190 Okla. 120, 121 P.2d 581 (1942).

At the close of the plaintiff [worker's] case-in-chief, the defendant [employer] demurred to the evidence on the ground that, "they have not put on any *direct [emphasis mine ]* evidence that anyone said that this man was discharged for something relating to a Worker's Compensation claim or any evidence that anything was done *in writing [emphasis mine ]* that illustrated that." The trial court in overruling the employer's demurrer stated:

"I believe counsel ... stated in his opening statement that the case would be a circumstantial one, as most all of these are. I don't know if you ever have a situation where someone from management says you're fired because you filed a worker's compensation claim. It has to be gained through surrounding circumstances, if at all by a jury.

But I believe it is sufficient to go to the jury, or to overcome the demurrer at least. Whether it is sufficient, of course, will be for the jury. But the demurrer will be overruled."

I am of the opinion that the trial court correctly assessed the posture of the case and that the circumstantial evidence presented by the worker, Richard Thompson, was sufficient to let the case go to the jury.

The evidence discloses that Thompson worked for this employer as a long-haul truck driver for approximately six years before sustaining the on-the-job injury which prompted the filing of the worker's compensation claim which is here the subject of inquiry. Evaluations of his work were favorable prior to August 23, 1982, the date of the on-the-job injury. Subsequent thereto, the doctor whom Thompson's employer had sent Thompson, released Thompson to return to work; but for light duty only, restricting Thompson's driving to a 40–mile radius, rather than long-haul distance driving. Thompson testified, however, that upon returning to the job he was told to either take the tickets [job designations] offered or go home; that "if you can't do it, you get on welfare". Thompson further testified that after filing the worker's compensation claim his employer's attitude toward him changed dramatically. On the identical date Thompson filed his first report of injury, the employer issued a letter to Thompson offering him local driver's work; or light delivery at a reduction in pay; but requiring him to return to his regular job classification within a specified time. In the event Thompson could not within such time return to long-haul driving, Thompson was to be relegated indefinitely to unpaid "leave of absence". Immediately following the November 5, 1982 filing of the worker's compensation claim, Thompson testified that:

"I went to work two days and nobody said nothing to me. Well, just not a thing. This is the truth. I sat there for two days; nobody said, Richard, go do this, and Richard. And I said, what you all want me to do. We'll get to you later. So, the day after that they went in there and they said that they was going to give Bud two dollars and a quarter of my pay for him to drive the truck and cut my pay down and give it to Bud. And Bud cannot even probably get a chauffeur's license, which he was telling me, to drive a truck. There's no way they can operate the forklift job without a truck—the forklift company without a truck driver."

Thompson further testified that nevertheless he stayed on the job and during the month of November he did make daily local runs, in addition to performing mechanic's work, but that:

"They would give me transmissions and stuff, you know. If I had to do mechanic work, it would be something underneath because I wore this brace and it made it hard to bend. *I mean, it seemed like they was doing that purposefully to me." [Emphasis added.]*

Finally, if the worker's testimony is to be believed, the company's employee turnover is great, therefore normally the company follows a policy of first laying off employees with the least seniority during a work slow down. Thompson's employment was terminated on December 6, 1982, though he was the employee with the greatest seniority in the Service Department. It was

Thompson's stated belief that "lack of work" was not the reason for the termination of his employment, but rather that employment problems developed only after he claimed worker's compensation benefits.

Because there was evidence pertaining to retaliatory discharge which warranted submission of the issue to the jury, the instruction requiring the worker to prove he was discharged *solely* by reason of pursuing a worker's compensation claim is reversible error.

I am authorized to state that DOOLIN, C.J., joins in the views expressed herein.