F I L E D
United States Court of Appeals
Tenth Circuit

APR 1 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KATHLEEN BLACKWELL,

    Plaintiff-Appellant,

v.

SHELTER MUTUAL INSURANCE
COMPANY,

    Defendant-Appellee.

No. 96-6169

Appeal from the United States District Court
for the District of W.D. Okla.
(D.C. No. CIV-95-704-C)

Laurie W. Jones of Welch, Jones & Smith, P.C., Oklahoma City, Oklahoma, for
Plaintiff-Appellant.

Stephen L. Olson (Kathleen J. Adler and Haven Tobias; and Pierce Couch
Hendrickson Baysinger & Green with him on the brief), Oklahoma City,
Oklahoma, for Defendant-Appellee.

Before **BALDOCK, BRORBY** and **MURPHY**, Circuit Judges.

**BRORBY**, Circuit Judge.

In August 1994, Shelter Mutual Insurance Company ("Shelter Mutual")

terminated Kathleen Blackwell from employment after twenty years of service with the company. Thereafter, Ms. Blackwell filed suit against Shelter Mutual in the United States District Court for the Western District of Oklahoma, alleging her termination was in retaliation for exercising her rights under Oklahoma's Workers' Compensation Act, Okla. Stat. Ann. tit. 85, §§ 1 - 9 (West 1992 & Supp. 1997). The district court determined Ms. Blackwell failed to establish a *prima facie* case of retaliatory discharge and granted summary judgment in favor of Shelter Mutual. Ms. Blackwell appeals the district court's entry of summary judgment. We exercise jurisdiction over Ms. Blackwell's appeal pursuant to 28 U.S.C. § 1291 and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Blackwell was employed by Shelter Mutual for approximately twenty years, beginning in 1974. In January 1993, Ms. Blackwell injured her back while lifting a ladder on the job. Ms. Blackwell sought medical treatment for her injury, but continued working until March 1993. On March 1, 1993, Ms. Blackwell's supervisor, Steve Duke, advised Ms. Blackwell to see a neurologist regarding her back injury. Following her visit to the neurologist, Ms. Blackwell missed approximately four months of work because of her injury. Ms. Blackwell continued to receive full salary during her leave of absence.

While out of work, Mr. Duke called Ms. Blackwell and inquired as to when she would be able to return to work. Although Mr. Duke informed her the workload was heavy and she was needed back at the office, Mr. Duke did not state her job was in jeopardy if she did not return to work. However, Ms. Blackwell claims she "got the feeling" from Mr. Duke's "mannerism" that he did not want Ms. Blackwell on workers' compensation. Furthermore, Ms. Blackwell thinks other adjusters implied to her that her job would be in jeopardy if she did not return to work. In addition, a Shelter Mutual employee in the Tulsa office told Ms. Blackwell that he did not believe he was treated fairly by Shelter Mutual after he filed a workers' compensation claim.

Ms. Blackwell returned to work at Shelter Mutual on July 6, 1993. In May 1994, Shelter Mutual branch manager Don Ridlon recommended a merit increase in salary for Ms. Blackwell. However, Mr. Ridlon advised Shelter Mutual to place a "hold" on the merit increase after he received some "strong allegations" against Ms. Blackwell regarding her involvement in the improper handling of salvage vehicles. Apparently Mr. Ridlon learned that several vehicles Ms. Blackwell determined to be total losses were later owned by Ms. Blackwell's son or processed through the business of Ms. Blackwell's husband. Mr. Ridlon also became aware of allegations concerning an insurance claim Ms. Blackwell

improperly paid after another agent had previously denied this same claim. Mr. Ridlon learned that Ms. Blackwell may have removed or destroyed pictures in the file related to this claim. This incident has been referred to as the "Schwartz incident" throughout this litigation.

On May 24, 1994, Mr. Duke sent Ms. Blackwell a five-page written reprimand outlining a number of problems with her job performance. Mr. Duke's reprimand stated, in pertinent parts, as follows:

> Your work product has been faltering and, as you have mostly failed to respond to my verbal suggestions, you have left me no other option but to outline the problems that have been created by your work over the last few months....
>
> ....
>
> The agents in your territory, not one, but a majority, are calling in, expressing concern that they are having to cover for you way too much. They feel your work over the last few months is causing damage to the service reputation of their agencies, and [Mr. Ridlon] and I feel their complaints to be valid.
>
> ....
>
> [S]ervice is not being provided as required by your employer. Your investigations are often haphazard; many times, either delayed or incomplete.... We are seeing more and more people calling, including agents, stating that you are not returning their calls....
>
> ....
>
> Some of your files make me very nervous, as to their ability to comply with requirements in [the Fair Claims Practice Act]. As a

-4-

result, I feel that some of your investigations are not of an acceptable standard. I need to see a speed and quality improvement immediately in this very serious area of concern.

Mr. Duke's letter went on to list a number of procedures Shelter Mutual expected Ms. Blackwell to "adhere to religiously" in order to improve her work performance. In conclusion, Mr. Duke warned there would be "difficult decisions for both of us to make" if Ms. Blackwell did not substantially improve her performance.

On several occasions in May and June of 1994, Ms. Blackwell and Mr. Ridlon discussed the Schwartz incident, as well as Ms. Blackwell's alleged involvement in the misappropriation of salvage. Ms. Blackwell told Mr. Ridlon she could not remember much about the circumstances surrounding the loss or the adjustment of the Schwartz file. Ms. Blackwell also advised Mr. Ridlon she had never profited from any of her salvage dealings. On July 14, 1994, Mr. Ridlon sent a twenty-two-page memorandum concerning Ms. Blackwell to Ray Warner, regional claims director of Shelter Mutual. The memorandum detailed Mr. Ridlon's investigation into the Schwartz incident and the alleged misappropriation of salvage by Ms. Blackwell. In the report, Mr. Ridlon stated he did not believe Ms. Blackwell provided him with "straight answers" to many of his questions surrounding the incidents.

Mr. Duke evaluated Ms. Blackwell's job performance in July and August of 1994. In each of these evaluations, Mr. Duke noted Ms. Blackwell's performance had improved in a number of areas. Also, in the July 14, 1994 memo to Mr. Warner, Mr. Ridlon stated Ms. Blackwell had begun addressing the problems detailed in Mr. Duke's letter of May 24, 1994.

On July 7, 1994, Ms. Blackwell informed Mr. Duke her back was still causing her trouble. Mr. Duke advised Ms. Blackwell to schedule a follow-up visit with her doctor.

According to a company memorandum, Shelter Mutual's Legal and Human Resources department recommended terminating Ms. Blackwell on August 22, 1994, "due to numerous problems." The author of the company memorandum noted he or she believed Ms. Blackwell would have a workers' compensation claim.

On August 25, 1994, Don Ridlon terminated Ms. Blackwell's employment with Shelter Mutual. Mr. Ridlon explained she was being terminated due to "unresolved performance problems," problems with salvage, and the Schwartz file. Approximately one month after her discharge, Ms. Blackwell filed a

workers' compensation claim against Shelter Mutual.

In May 1995, Ms. Blackwell initiated this retaliatory discharge lawsuit against Shelter Mutual. However, in April 1996, the district court entered summary judgment in favor of Shelter Mutual, concluding Ms. Blackwell failed to establish her termination was in retaliation for pursuing workers' compensation relief.

## II.  ISSUES

Ms. Blackwell raises two issues on appeal:  (1) whether she presented sufficient evidence to establish the exercise of her rights under Oklahoma's Workers' Compensation Act was a significant factor motivating Shelter Mutual's decision to terminate her and, if so, (2) whether Ms. Blackwell presented sufficient evidence to prove Shelter Mutual's proffered explanation for her discharge was pretextual.

## III.  ANALYSIS

### A.  Standard of Review

We review the district court's order granting summary judgment *de novo*, applying the same legal standard used by the district court pursuant to Fed. R.

Civ. P. 56(c).  *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995).  Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment.  *Wolf*, 50 F.3d at 796 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  In applying the summary judgment standard, we must examine the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. *Wolf*, 50 F.3d at 796.

### B.  *Prima Facie* Case

Here, Ms. Blackwell contends the district court improperly concluded she could not establish a *prima facie* case of retaliatory discharge.  Specifically, Ms. Blackwell argues she presented sufficient evidence to prove the exercise of her rights under Okla. Stat. tit. 85, § 5(A) was a factor that significantly motivated Shelter Mutual's decision to terminate her employment.  Because this case arises from diversity jurisdiction under 28 U.S.C. § 1332, we must look to Oklahoma law to resolve Ms. Blackwell's contention.  *See Barrett v. Tallon*, 30 F.3d 1296,

-8-

1300 (10th Cir. 1994) (federal court sitting in diversity applies substantitve law of forum state).

As an initial matter, we note it is undisputed Ms. Blackwell was an at-will employee of Shelter Mutual. Under Oklahoma law, an at-will employment relationship ordinarily may be terminated by either party at any time, without liability. *Hinson v. Cameron*, 742 P.2d 549, 552 n.6 (Okla. 1987). However, an exception to this doctrine is that an employer may not terminate an employee for exercising her rights under the Oklahoma Workers' Compensation Act. Okla. Stat. tit. 85, § 5(A); *Taylor v. Cache Creek Nursing Centers*, 891 P.2d 607, 609 (Okla. App. 1994). Okla. Stat. tit. 85, § 5(A)(1) prohibits any "person, firm, partnership or corporation [from] discharg[ing] any employee because the employee has ... instituted or caused to be instituted, in good faith, any proceeding under the [Oklahoma Workers' Compensation Act]."

To establish a *prima facie* case of retaliatory discharge under § 5(A)(1), a discharged employee must prove the following four elements: (1) employment; (2) on-the-job injury; (3) medical treatment which put the employer on notice that treatment had been rendered for a work-related injury; and (4) consequent termination. *Buckner v. General Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988).

If the discharged employee establishes a *prima facie* case, the burden shifts to the employer to rebut the inference of a retaliatory motive by articulating a legitimate, non-retaliatory reason for the termination. *Id.* The employer's burden is simply one of production, not persuasion. *Id.* at 807. If the employer satisfies this burden, the presumption of retaliatory motive is successfully rebutted. *Id.* At that point, the discharged employee can only prevail by proving his termination was significantly motivated by retaliation for his exercise of statutory rights, or by proving the employer's proffered reason for the discharge was pretextual. *Id.*

Here, there is no dispute Ms. Blackwell can establish the first three elements of a *prima facie* case.[1] The focus of this appeal is on the fourth and final element -- whether a consequent termination occurred. The district court concluded Ms. Blackwell could not establish the occurrence of a consequent termination and granted summary judgment in favor of Shelter Mutual. We turn to Oklahoma law to determine if the district court's conclusion was proper.

---

[1] To the extent Shelter Mutual argues on appeal that Ms. Blackwell cannot establish she "instituted or caused to be instituted" a worker's compensation proceeding, *see* Okla. Stat. tit. 85, § 5(A)(1), we refuse to consider this issue. In its motion for summary judgment, Shelter Mutual conceded the only issue in dispute was whether a "consequent termination" occurred. It is too late for Shelter Mutual to recant on its concession and seek review of an issue not raised below. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (in general, we refuse to consider issues not raised before the district court).

In order to establish a consequent termination under Oklahoma law, a plaintiff must produce evidence sufficient to support a legal inference that the termination was "significantly motivated" by retaliation for exercising her statutory rights.[2] *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1058 (Okla. 1993); *Taylor*, 891 P.2d at 610. Although a plaintiff need not meet a "but for" standard, she must present evidence that does more than show the exercise of her statutory rights "was only one of many possible factors resulting in [her] discharge." *Wallace*, 850 P.2d at 1059.

---

[2] Ms. Blackwell argues, quoting *Canady v. J.B. Hunt Transport, Inc.*, 970 F.2d 710, 714 (10th Cir. 1992), that to establish a consequent termination, "evidence must be presented which either gives rise to a legal inference that the firing was 'significantly motivated' by retaliation for the exercise of workers' compensation rights *or by showing indirectly that 'the employer's proferred explanation is unworthy of* credence.'" (Emphasis added.) We do not believe *Canady* stands for the proposition that a plaintiff may establish a consequent termination by proving her employer's proferred reason for the termination is unworthy of credence. Since the employer is not required to present a legitimate reason for the plaintiff's discharge until after the plaintiff proves a *prima facie* case, it would be nonsensical to allow the plaintiff to establish a *prima facie* case by proving the employer's yet to be articulated reason is pretextual. When read in context, we believe the standard as set forth in *Canady* indicates a plaintiff may only establish a consequent termination by proving her discharge was significantly motivated by retaliation for exercising her statutory rights. *Canady*, 970 F.2d at 714-15. If the plaintiff proves a *prima facie* case, and the employer articulates a legitimate reason for the plaintiff's termination, *Canady* holds that the plaintiff can still prevail by showing the employer's proffered reason was not worthy of credence or by showing the termination was significantly motivated by retaliation for her exercise of statutory rights. *Id.*

-11-

In *Taylor*, the defendant-employer fired the plaintiff immediately after the plaintiff returned from a two-week, doctor-ordered disability leave. 891 P.2d at 609. The plaintiff filed suit against her employer, alleging retaliatory discharge in violation of Okla. Stat. tit. 85, §§ 5 and 6. *Id.* The district court determined the plaintiff could not establish a *prima facie* case, and granted summary judgment in favor of the employer. *Taylor*, 891 P.2d at 609. The Oklahoma Court of Appeals agreed, concluding the plaintiff failed to show a "consequent termination" of employment. *Id.* at 610. Important to its decision, the court found there was no evidence "showing a pattern of termination of workers who filed claims, or of pressure put on workers not to file claims." *Id.* Furthermore, the court determined the fact that the plaintiff was fired immediately after returning from disability leave was insufficient to raise a legal inference that the firing was significantly motivated by retaliation. *Id.*

Similarly, in *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 464 (Okla. 1987), the defendant-employer fired the plaintiff six weeks after the plaintiff filed a workers' compensation claim for an on-the-job injury. Notwithstanding the temporal proximity of the workers' compensation claim to the plaintiff's termination, the Oklahoma Supreme Court held the plaintiff failed to establish the filing of the claim had any effect on the employer's decision to

terminate his employment. *Id.* at 463. The court found the plaintiff's evidence:

> fail[ed] to do anymore [sic] to connect his termination to the filing of the Workers' Compensation claim than to establish that the two events happened approximately six weeks apart. [The plaintiff did] not even allege that his supervisors or others at any time made any reference regarding termination as a result of bringing the Workers' Compensation action. From the evidence presented nothing [could] be legally inferred. The reasons for [the plaintiff's] discharge, other than those stated by [the defendant], could only be deduced by pure speculation.

*Id.* at 464.

Here, as in *Taylor* and *Thompson*, there is no evidence Shelter Mutual engaged in a pattern of terminating or otherwise discriminating against employees who engaged in protected activity under Oklahoma's Workers' Compensation Act. Although Ms. Blackwell spent approximately twenty years with Shelter Mutual, Ms. Blackwell has no evidence of any Shelter Mutual employee, other than herself, who was terminated for initiating a workers' compensation action. Furthermore, Ms. Blackwell can refer to only one employee, other than herself, who believed he was treated unfairly for filing a workers' compensation claim. Ms. Blackwell has presented no evidence concerning the specific unfair treatment this employee allegedly received.

Also similar to *Taylor* and *Thompson*, the evidence in this case fails to

show that Shelter Mutual sought to prevent Ms. Blackwell from filing a workers' compensation claim. Although Ms. Blackwell claims she "got the feeling" from Mr. Duke's "mannerism" that he did not want her on workers' compensation, Ms. Blackwell does not allege any of her superiors ever advised her or put pressure on her to not file a claim. The undisputed evidence reveals Shelter Mutual was concerned about Ms. Blackwell's back injury and about Ms. Blackwell receiving proper treatment for her injury. On more than one occasion, Mr. Duke advised Ms. Blackwell to seek medical treatment. If Shelter Mutual truly sought to prevent Ms. Blackwell from filing a workers' compensation claim, we doubt Shelter Mutual would have repeatedly encouraged Ms. Blackwell to seek medical treatment for her injury.

Nor do we believe the timing of Ms. Blackwell's termination raises an inference of retaliatory discharge. In *Taylor*, the court determined there was no inference of retaliation even though the plaintiff was fired immediately after returning from a two-week, doctor-ordered disability leave. 891 P.2d at 610. Similarly, the court in *Thompson* determined the plaintiff, who was discharged six weeks after filing for workers' compensation, could not establish a retaliatory discharge claim. 732 P.2d at 463-64. Here, the temporal relationship between the protected activity and Ms. Blackwell's discharge is even more attenuated. Shelter

-14-

Mutual fired Ms. Blackwell thirteen months after her leave of absence from work. Although Ms. Blackwell informed Shelter Mutual her back was still causing her problems in July 1994, there is no evidence this information influenced her termination. Since no inference of retaliation was raised in *Taylor* and *Thompson*, we conclude the timing of the discharge in the present case does not raise an inference of retaliation.

Looking to the entire evidence in the light most favorable to Ms. Blackwell, we do not believe a reasonable jury could conclude her discharge was significantly motivated by retaliation for exercising her rights under the Workers' Compensation Act. Ms. Blackwell has simply failed to establish a nexus between her termination and any protected activity on her part. Accordingly, we conclude Ms. Blackwell cannot establish a *prima facie* case of retaliatory discharge under § 5(A) of the Oklahoma Workers' Compensation Act.[3]

---

[3] At oral argument, counsel for Ms. Blackwell cited *Pytlik v. Professional Resources, Ltd*, 887 F.2d 1371 (10th Cir. 1989) in support of her argument that Ms. Blackwell had established a *prima facie* case. In *Pytlik*, the plaintiff was injured during the course of his employment with the defendant and hired an attorney to pursue his rights under the workers' compensation laws. 887 F.2d at 1381. Less than two months after hiring an attorney, the defendant terminated the plaintiff citing a reduction in the work force. *Id.* Thereafter, the district manager informed the plaintiff that "it was very unfair that [the plaintiff] should be terminated just because [he] asked for advice from a lawyer." *Id.* at 1382.

The plaintiff filed suit in federal district court alleging, *inter alia*,

## C. Pretext

Having determined Ms. Blackwell cannot prove a *prima facie* case, we have no reason to decide whether Shelter Mutual's reasons for her termination were really a pretext for unlawful retaliation. Nevertheless, our review of the record indicates Ms. Blackwell has presented insufficient evidence to establish Shelter Mutual's reasons for her discharge were pretextual.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Shelter Mutual Insurance Company.

---

retaliatory discharge. *Id.* at 1380-81. Although the district court directed a verdict in the defendants' favor on the retaliation claim, we reversed, determining the plaintiff presented sufficient evidence to establish a *prima facie* case of retaliatory discharge. *Id.* at 1380-82. We found the district manager's statement that the plaintiff was fired for hiring an attorney established a nexus between the plaintiff's termination and his exercise of rights under Oklahoma's Workers' Compensation Act. *Id.* at 1382.

Notwithstanding Ms. Blackwell's contentions to the contrary, *Pytlik* is inapposite to the present case. Unlike the plaintiff in *Pytlik*, Ms. Blackwell failed to present any statements by Shelter Mutual or any other evidence tending to establish a nexus between Ms. Blackwell's termination and her participation in protected activities. Consequently, Ms. Blackwell has not established a *prima facie* case of retaliatory discharge under Oklahoma's Workers' Compensation Act.