**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 29 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MICHAEL C. BINGHAM,

      Plaintiff-Appellant,

v.

DYNAIR FUELING INC.,

      Defendant-Appellee.

No. 96-6270
(D.C. No. 95-CV-448-L)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before BALDOCK, EBEL, and LUCERO, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Michael C. Bingham sued his former employer, DynAir Fueling, Inc., in Oklahoma state court, claiming he was wrongfully discharged in violation of Okla. Stat. Ann. tit. 38, § 35 (West 1992) for his absence from employment due to jury service. Alleging diversity jurisdiction, DynAir, a Delaware corporation, removed the case to federal district court under 28 U.S.C. § 1332. Bingham then amended his complaint to allege further that DynAir wrongfully terminated him in order to avoid its safety and maintenance responsibilities in violation of Oklahoma and federal public policy. The district court's order granted summary judgment in favor of DynAir on all claims, and Bingham appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

BACKGROUND

Bingham had been employed by DynAir as an aircraft refueler for eight years when DynAir terminated him in September 1994. In May 1994, Bingham had been selected for jury service on a lengthy murder trial which did not end until October 1994. While on jury duty, Bingham performed his jury service on Monday through Thursday, and worked at DynAir on Saturday and Sunday of each week. On August 27, 1994, while Bingham was working, Bingham overloaded a fuel truck, causing five gallons of jet fuel to spill. DynAir terminated Bingham a few days later, claiming his negligence had caused the spill.

## STANDARD OF REVIEW

We review the district court's order granting summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment. Wolf, 50 F.3d at 796 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In applying the summary judgment standard, we must examine the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. Wolf, 50 F.3d at 796.

## JURY SERVICE RETALIATION CLAIM

### Analytical Framework

To establish a prima facie case of wrongful discharge under Okla. Stat. Ann. tit. 38, § 35, the discharged employee must show (1) employment; (2) absence from employment by reason of the employee's having been required to serve as a juror; and (3) discharge from employment because of absence due to

-3-

jury service. Brown v. MFC Fin. Co. of Oklahoma, 838 P.2d 524, 526 (Okla. Ct. App. 1992). After a plaintiff establishes a prima facie case, the burden then shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate, non-retaliatory reason. See Buckner v. General Motors Corporation, 760 P.2d 803, 806 (Okla. 1988) (explaining burdens of production and persuasion in workers' compensation retaliatory discharge claims under Okla. Stat. Ann. tit. 85, § 5, adopted by Brown, 838 P.2d at 527, for application to jury service retaliatory discharge claims under Okla. Stat. Ann. tit. 38, § 35). Once the employer comes forward with a non-retaliatory reason for the discharge,

> the employee may carry the burden of persuading the trier of fact that the discharge was retaliatory in nature if he or she proves the discharge was 'significantly motivated' by retaliation for [his] exercise of statutory rights or by showing that the employer's proffered reason for the discharge is a pretext.

Brown, 838 P.2d at 527 (citing Buckner, 760 P.2d at 807, 810.)

The district court held that Bingham failed to establish a prima facie case. As we will discuss below, this conclusion is correct, but the district court mistakenly permitted plaintiff to attempt to establish the third element of a prima face case, that is, discharge from employment because of absence due to jury service, by presenting evidence either that the discharge was "significantly motivated" by retaliation for the employee's jury service or that the employer's

-4-

proffered reason for the discharge is a pretext, citing <u>Brown</u>, 838 P.2d at 527.

<u>Brown</u> had summarily adopted the analytical framework describing the burdens of

production and persuasion articulated in workers' compensation retaliatory

discharge claim cases under Okla. Stat. Ann. tit. 85, § 5, without describing that

framework in any detail.  <u>See Brown</u>, 838 P.2d at 527.  It is clear from

Oklahoma's workers' compensation retaliatory discharge cases that in order to

establish a prima facie case of retaliatory discharge, a plaintiff must first present

evidence sufficient to support a "legal inference" that his or her termination was

"significantly motivated by retaliation for the employee's exercise of statutory

rights," here, the performance of jury duty.  <u>Buckner</u>, 760 P.2d at 810; <u>see also</u>

<u>Wallace v. Halliburton Co.</u>, 850 P.2d 1056, 1058 (Okla. 1993); <u>Taylor v. Cache</u>

<u>Creek Nursing Ctrs.</u>, 891 P.2d 607, 610 (Okla. Ct. App. 1994).  A plaintiff may

not establish a prima facie claim merely by showing that the employer's proffered

reason is unworthy of credence.  <u>See</u> <u>Blackwell v. Shelter Mutual Ins. Co.</u>,

No. 96-6169, 1997 WL 150061, at *4 n.2 (10th Cir. Apr. 1, 1997) (holding same,

interpreting Oklahoma's workers' compensation retaliatory discharge cases).

Only if the plaintiff has proven a prima facie case and the employer has

articulated a legitimate reason for the plaintiff's termination, may the plaintiff

still prevail by meeting the burden of persuading the trier of fact that the

discharge was retaliatory in nature by proving either that the discharge was

"significantly motivated" by the plaintiff's absence due to jury service <u>or</u> that the employer's proffered reason for the discharge is a pretext.  <u>See</u> <u>id.</u>

Evidence Presented

The evidence Bingham presented in an attempt to demonstrate a legal inference that he was discharged from employment because of absence due to jury service consisted solely of the fact that DynAir was obligated to pay overtime to workers covering for Bingham while he was on jury service, and Bingham's testimony that he thought his supervisor, Bruce Jones, became "short and surly" with him after he started jury service, and once mentioned that he could not go to the race track on his usual day off because he had to work those days in order to cover for Bingham's absence.  We agree with the district court that nothing can be legally inferred from this evidence.

The mere fact DynAir had to pay overtime to cover for Bingham, by itself, does not raise an inference that Bingham was terminated for his jury service. Bingham's belief that Jones' attitude towards him changed after he began jury service is "pure speculation."  <u>See</u> <u>Thompson v. Medley Material Handling, Inc.</u>, 732 P.2d 461, 464 (Okla. 1987); <u>see also</u> <u>Blackwell</u>, 1997 WL 150061, at *6 (plaintiff's claims that she "got the feeling" from her supervisor's "mannerism" that he did not want her to file a workers' compensation claim insufficient to raise inference of retaliatory discharge under Okla. Stat. Ann. tit. 85, § 5).  Nor does

the statement by Jones that he could not go to the race track raise an inference that Bingham's subsequent termination was related to his jury service because it did not relate to Bingham's job or the subsequent termination decision, nor was Jones the decision-maker in the termination. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531-32 (10th Cir. 1994).

There was no evidence Bingham's supervisors or others at DynAir pressured Bingham about his jury service or otherwise sought to prevent him from performing his jury duty, see Reuther v. Fowler & Williams, Inc., 386 A.2d 119, 121 (Pa. 1978) (jury question where plaintiff presented evidence his employer fired him for not trying harder to get excused from jury service), or ever mentioned or indicated in any way that his job was in jeopardy because of his jury service, see Thompson, 732 P.2d at 464, and Taylor, 891 P.2d at 610 (both concluding prima facie case of workers' compensation retaliatory discharge claim not established where no evidence that supervisors made any reference to termination as a result of filing claim). In comparison, in Brown, the only Oklahoma decision applying Okla. Stat. Ann. tit. 38, § 35, the Oklahoma Court of Appeals held that a jury question was presented where plaintiff presented evidence that the defendant-employer, who had fired the plaintiff while she was on jury duty, told her to return to work or else she would lose her job. 838 P.2d at 527. Bingham must do more than show that his termination occurred at the

same time as his jury service. See Large v. Acme Eng'g & Mfg. Corp., 790 P.2d 1086, 1088 (Okla. 1990); Thompson, 732 P.2d at 464 and Taylor, 891 P.2d at 610 (all Oklahoma workers' compensation retaliatory discharge claims holding that the evidence that the employee was fired contemporaneously with a workers' compensation claim, by itself, is insufficient to raise a legal inference that the firing was significantly motivated by retaliation). The facts alleged by Bingham provide no inference of a causal connection between his termination and his jury service. Thus, the district court correctly concluded Bingham failed to establish a prima facie case of termination for jury service in violation of Okla. Stat. Ann. tit. 38, § 35.

Even assuming Bingham's evidence had been sufficient to demonstrate a prima facie case, DynAir responded by presenting evidence of a facially non-retaliatory reason for terminating Bingham's employment: that Bingham negligently caused a jet fuel spill. Bingham failed to create a genuine issue of material fact that DynAir's stated basis was pretext. Pretext is shown by "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., No. 96-5111, 1997 WL 118531, at *3 (10th Cir. Mar. 18, 1997)

-8-

(quotation omitted)). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Id. (quoting Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)).

Bingham based his pretext claim on his assertions that (1) he was not negligent in spilling the fuel, pointing to a dispute as to whether he performed the required precheck of the automatic shut-off valve which might have determined the valve was not operable; (2) DynAir's stated reason for firing him conflicts with Jones' testimony that he might not have been fired if he had reported the spill; and (3) he could not have complied with DynAir's reporting requirements because he was not aware of the oil spill. We agree with the district court that this evidence did not raise a factual issue regarding pretext.

The disputes over whether Bingham did the required precheck of the valve or knew about the fuel spill do not raise genuine issues as to material facts because there is no evidence that DynAir did not believe Bingham negligently caused the spill. The relevant inquiry is whether Mr. Estrella, DynAir's executive vice president responsible for the termination decision, reasonably believed Bingham was negligent in failing to take adequate steps to prevent the oil spill. There is no evidence that Estrella did not actually believe Bingham was negligent and instead used the spill as a pretext for an otherwise retaliatory discharge.

Bingham may disagree with DynAir's decision, but such disagreement does not constitute pretext. Bingham's evidence regarding his performance shows, at most, that DynAir may have exercised its business judgment erroneously; however, "an employer's exercise of erroneous or even illogical business judgment does not constitute pretext." Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1535 (10th Cir. 1995). In the absence of evidence of an improper motive, Bingham has not met his burden of showing that DynAir's reason was a pretext for retaliation.

Finally, as to Jones' statement that Bingham might not have been terminated if he had reported the spill, while it is true that this court has inferred pretext when an employer changed its reason for terminating an employee, Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1380-81 (10th Cir. 1994), there is no evidence in this case that DynAir ever changed its position that Bingham was fired for negligently causing the spill. Even assuming that Jones' statement was more than a purely speculative remark and actually reflected DynAir's position, the two explanations would not constitute "fundamentally different justifications" for DynAir's action such as "would give rise to a genuine issue of fact with respect to pretext." See Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993). We conclude that no reasonable jury could find pretext based upon the evidence Bingham presented.

PUBLIC POLICY CLAIM

Under Oklahoma law, when an employment contract is of indefinite duration, it is terminable at will by either party, and "an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong," Burk v. K-Mart Corp., 770 P.2d 24, 26 (Okla. 1989). However, Oklahoma recognizes a judicial exception to the employment-at-will doctrine where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing acts consistent with clear and compelling public policy. See Burk, 770 P.2d at 29. The exception only applies "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law" and the public policy exception must be "tightly circumscribed." Id. at 28-29.

Bingham asserts he was terminated in order to cover up evidence that DynAir continued to use trucks with inoperable automatic shut-off valves allegedly in violation of federal safety and maintenance laws and regulations. However, there is no evidence in this case that Bingham ever refused to act in violation of any safety or maintenance laws or regulations, ever complained to any supervisor about any illegal safety or maintenance violations, reported any such violations to any outside law enforcement officials, or performed any act

-11-

consistent with a clear and compelling public interest with respect to the alleged violations.[1]  We agree with the district court that Bingham failed to present evidence sufficient to state a <u>Burk</u> claim.  As Bingham raised no separate argument regarding his federal public policy claim, our conclusions concerning his state public policy claims dispose of this claim as well.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge

---

[1]     Moreover, even if Bingham had reported these alleged violations, Oklahoma has not concluded whether good faith reporting of employer infractions of rules, regulations or the law pertaining to the public health, safety or general welfare would state a <u>Burk</u> claim.  <u>See</u> <u>Hayes v. Eateries, Inc.</u>, 905 P.2d 778, 787 n.7 (Okla. 1995).