**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JANE HUGGARD,

      Plaintiff-Appellant,

v.

GOLDEN CORRAL CORPORATION,
a North Carolina Corporation,

      Defendant-Appellee.

No. 98-6112
(D.C. No. CIV-97-1130-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** [*]

---

Before **ANDERSON** , **KELLY** , and **LUCERO** , Circuit Judges.

---

Plaintiff Jane Huggard seeks review of an order of the United States

District Court for the Western District of Oklahoma granting summary judgment

to defendant Golden Corral Corporation. [1] She brought suit against defendant

seeking damages for alleged wrongful discharge (1) in violation of Okla. Stat.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

tit. 85, §§ 5-7 for bringing a workers' compensation claim against defendant, and (2) in violation of public policy for reporting the use of illegal drugs by one of defendant's employees. The cause was based on diversity jurisdiction and asserted only state law causes of action. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

The following facts are either undisputed or were assumed true for purposes of the summary judgment motion. In January of 1996, plaintiff began working at defendant's restaurant in Midwest City, Oklahoma. In January of 1997, she reported the illegal use of drugs by a coworker to a supervisor (Mr. Cox). According to plaintiff, this caused her supervisor (Mr. Rowaichi) to exhibit hostility towards her, which in turn prompted her to seek a transfer to another of defendant's restaurants. On June 12, 1997, she met with the manager of the other restaurant (Mr. Rivera) and explained her reasons for wanting the transfer. Mr. Rivera allegedly hired her and told her to submit a two-week notice of resignation to the Midwest City restaurant, which she did, in writing, the following day. The written resignation read, "Please accept this note as my two week notice—last day of work—27 June. [signed] Jane Huggard." Appellant's App. at 17.

On June 15, 1997, plaintiff fell at work, injuring her right shoulder, back, and right wrist. She stayed at work for awhile but eventually requested

permission to leave to seek medical attention. On doctor's orders, she did not return to work immediately. Mr. Rowaichi witnessed the fall and knew a doctor had advised her not to return to work. On June 18, 1997, plaintiff asked her doctor for a return-to-work slip, which he gave her. She called Mr. Rivera to schedule her start to work at the new restaurant. Mr. Rivera told her there were no longer any positions available.

Plaintiff then called Mr. Rowaichi to cancel her resignation, but he refused. Several days later, plaintiff's daughter called Mr. Rivera, who told the daughter he had openings for a night waitress and she should apply. In plaintiff's deposition, taken in December of 1997, she stated that she has been unable to work since the June 15, 1997, accident.

"We review the grant of summary judgment de novo, applying the customary legal standard under Fed. R. Civ. P. 56(c)." See Vice v. Conoco, Inc., 150 F.3d 1286, 1288 (10th Cir. 1998) (further citations omitted). "In applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Mount Olivet Cemetery Ass'n v. Salt Lake City, ___ F.3d ___, No. 97-4078, 1998 WL 869677, at *3 (10th Cir. Dec. 15, 1998).

Retaliatory Discharge

-3-

Okla. Stat. tit. 85 § 5 [2] provides as follows:

A.    1.    No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of this title, or has testified or is about to testify in any such proceeding.

     2.    No person, firm, partnership or corporation may discharge an employee during a period of temporary total disability solely on the basis of absence from work.

B.    No employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties. The failure of an employer to rehire or retain any such employee shall in no manner be deemed a violation of this section.

As we have recognized, Oklahoma law requires that

     To establish a  prima facie  case of retaliatory discharge under § 5(A)(1), a discharged employee must prove the following four elements:  (1) employment; (2) on-the-job injury; (3) medical treatment which put the employer on notice that treatment had been rendered for a work-related injury; and (4) consequent termination. Buckner v. General Motors Corp.   , 760 P.2d 803, 806 (Okla. 1988). If the discharged employee establishes a      prima facie  case, the burden shifts to the employer to rebut the inference of a retaliatory motive by articulating a legitimate, non-retaliatory reason for the termination.  Id.  The employer's burden is simply one of production, not persuasion.  Id. at 807.  If the employer satisfies this burden, the presumption of retaliatory motive is successfully rebutted.     Id.  At that point, the discharged employee can only prevail by proving his termination was significantly motivated by retaliation for his exercise of statutory rights, or by proving the employer's proferred reason for the discharge was pretextual.   Id.

---

[2]    This section was amended in November of 1998.  The new provisions do not alter the disposition of this appeal.

Blackwell v. Shelter Mut. Ins. Co., 109 F.3d 1550, 1554 (10th Cir. 1997).

The district court determined that plaintiff had established employment, on-the-job injury, and her supervisor's knowledge of the injury and medical treatment before the job at the second restaurant was "rescinded." In other words, plaintiff had met her burden of establishing the first three Buckner factors. See also Wallace v. Halliburton Co., 850 P.2d 1056, 1059-60 (Okla. 1993) (applying Buckner factors). The court further determined that defendant had shown "a legitimate, non-retaliatory reason for discharge . . . by invoking § 5B, which clarifies that no employee must be rehired or retained who is physically unable to perform assigned duties." Appellant's App. at 88. Finally, the court concluded that because it was undisputed that plaintiff was physically unable to return to employment after the date of the accident, no violation of § 5 could be found based on these facts. See id. at 89.

On appeal plaintiff argues that defendant could not have had a legitimate reason for her June 1997 discharge under § 5B because defendant did not know that she could not return to work after June 15 until the December deposition. See Appellant's Br. at 11-12. We need not address this issue, however, because we are persuaded that plaintiff failed to establish the requisite fourth factor under Buckner, i.e., consequent termination. See United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district court decision on

any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied on by the district court.").

To establish a consequent termination, "plaintiff must produce evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation for exercising her statutory rights." Blackwell, 109 F.3d at 1554 (citing Wallace, 850 P.2d at 1058) (footnote omitted); see also Taylor v. Cache Creek Nursing Ctrs., 891 P.2d 607, 610 (Okla. Ct. App. 1994)).

In Taylor the court determined that in and of itself, the fact that plaintiff was fired "immediately after returning from a two-week, doctor-ordered disability leave . . . does not raise a legal inference that the firing was significantly motivated by retaliation." 891 P.2d at 610; see also Wallace, 850 P.2d at 1058 ("[E]vidence must be at least sufficient to support a legal inference the discharge was significantly motivated by retaliation for exercising one's statutory rights."). The Taylor court also found, as an example, that there was no evidence "showing a pattern of termination of workers who filed [workers' compensation] claims, or of pressure put on workers not to file claims." 891 P.2d at 610. Here, as in Taylor, there is no suggestion that defendant has ever terminated an employee for filing a workers' compensation claim. See also Blackwell, 109 F.3d at 1555.

Likewise, in Thompson v. Medley Material Handling, Inc., 732 P.2d 461, 464 (Okla. 1987), the court held that the connection between the plaintiff's

termination and the subsequent filing of a workers' compensation claim failed to do any more than establish that the two events happened approximately six weeks apart. This, the court held, was insufficient to establish a prima facie case of discriminatory discharge. "To hold otherwise would be to require any employer laying off a worker who has at any time in the past filed a Workers' Compensation action to submit to a jury trial based purely on the coincidence of the layoff and the past filing." Id.

Here, the only facts established are that plaintiff suffered an on-the-job injury for which she sought medical attention and that several days later, on June 18, 1997, the day her doctor released her to return to work, her anticipated transfer to another restaurant was rescinded. She did not file a workers' compensation claim until June 19, 1997. Appellant's App. at 51.

Based on the determination in Taylor (where plaintiff was fired immediately after returning from disability leave) and in Thompson (where plaintiff was fired six weeks after filing for workers' compensation) that neither of those fact situations raised an inference of retaliation, we conclude that plaintiff in this case has failed to establish the element of a consequent termination. See Blackwell , 109 F.3d at 1556 (where reasonable jury could not conclude discharge significantly motivated by retaliation for exercising rights

under Workers' Compensation Act, plaintiff failed to establish a nexus between termination and any protected activity on her part). [3]

Public Policy Violation

As her second claim, plaintiff argues she was terminated for reporting drug use by her fellow employees. Plaintiff contends that after she reported the drug use, her own supervisor became increasingly hostile toward her and that defendant "failed to conduct any drug testing in response to her notice." Appellant's Br. at 17.

In Hinson v. Cameron, 742 P.2d 549 (Okla. 1987), the Oklahoma Supreme Court recognized the "public policy" exception to the at-will employment doctrine, which allows either the employer or employee to terminate employment without liability. See id. at 552. Claims recognized as actionable under the public policy exception are those by employees dismissed for

> (a) refusing to participate in an illegal activity; (b) performing an important public obligation; (c) exercising a legal right or interest; (d) exposing some wrongdoing by the employer; and (e) performing an act that public policy would encourage or, for refusing to do

[3] Plaintiff also argues that evidence of a pretextual reason for her separation from employment prevents summary judgment and constitutes sufficient proof that retaliation was a significant factor in defendant's decision to terminate her. Appellant's Br. at 15. This argument must fail. An "employer is not required to present a legitimate reason for the plaintiff's discharge until after the plaintiff proves a prima facie case," Blackwell, 109 F.3d at 1554, n.2, which plaintiff has failed to do.

something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation.

Id. at 552-53 (footnotes omitted).

The court has further defined the public policy exception as "tightly circumscribed" and requiring

circumstances which present an actionable tort claim under Oklahoma law [as being] where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy.

See Burk v. K-Mart Corp., 770 P.2d 24, 29 (Okla. 1989).

Plaintiff claims, without citation to any authority, that by reporting illegal drug use she was "'performing an important public obligation,' 'exposing some wrongdoing by the employer,' and 'performing an act that public policy would encourage.'" Appellant's Br. at 17. Defendant argued and the district court determined that none of the Hinson public policy concerns are raised by the facts of this case.

The only facts asserted by plaintiff were that she reported drug use by a fellow employee to a supervisor, that subsequently a different supervisor became more hostile toward her, and that no drug testing was performed in response to her notice. She does not claim she was ordered to perform an illegal act, refused to do a bad act or was prevented from exercising her rights. Nor does she connect the reporting of illegal drug use to her subsequent termination some five months

later. The facts as stated by plaintiff are simply legally insufficient to state a claim under the public policy language of Hinson .

AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge