Rick MOSLEY, Appellee,

v.

TRUCKSTOPS CORPORATION OF
AMERICA d/b/a Truckstops of
America, Appellant.

No. 77916.

Supreme Court of Oklahoma.

June 2, 1993.

Order Modifying Opinion on Limited
Grant of Rehearing May 9, 1994.

As Amended on Denial of Rehearing
May 9 and May 11, 1994.

As Corrected June 2, 1994.

G. Thorne Stallings, Jr., Blanchard, for appellee.

Melvin C. Hall, Oklahoma City, for appellant.

KAUGER, Judge:

Two issues are presented: 1) whether the trial court's refusal to give a jury instruction relieving an employer of liability for terminating an employee for misconduct discovered after the employee was terminated is grounds for reversal;[1] and 2) whether, with-

---

1. Truckstops' proposed jury instruction based on the holding of *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988) provides:

"If you find that the Plaintiff committed acts which constituted serious and pervasive misconduct and if you further find that the defendant employer would have been justified in

terminating the employment of the plaintiff based upon this serious and pervasive misconduct, **you must find the plaintiff is not entitled to any relief.** In considering the acts of the plaintiff, **you should consider acts which were committed by the plaintiff, even if those acts were not discovered** by the defendant employer

out the requested instruction, the jury was misled and failed to consider fully other evidence of legitimate non-retaliatory reasons for which the employee may have been discharged.[2] We find that: 1) a jury instruction relieving an employer of liability for terminating an employee engaged in misconduct discovered after the employee was terminated is contra to Oklahoma retaliatory discharge jurisprudence and giving the instruction is reversible error; and 2) the instructions given were consistent with Oklahoma retaliatory discharge law.

## FACTS

Truckstops Corporation of America (Truckstops/employer) hired Rick Mosley (Mosley/employee) as a mechanic in November of 1989. On April 5, 1990, Mosley slipped in a pit and injured his ankle. He worked the remainder of his shift and all the next day. The employee received treatment for the injury on April 7, 1990; and he contacted Truckstops on April 9, 1990, concerning his injury and medical treatment. The employer sent Mosley to a doctor who gave the employee a release to return to work;[3] and he was not scheduled to work again until April 13, and 15, 1990. The employee returned to work as scheduled, and he worked his entire shift on both dates.

At this juncture, the employee and employer differ on the facts. The employee's version is that he attempted to contact Truckstops on April 16, 1990, in reference to his visit to the doctor, but that he was unable to reach the employer. The employee insists that on April 17, 1990, he discussed his injury with Truckstops and informed them that he needed time off to recuperate. Later that same day, the employee returned to the doctor and received another limited work release.[4] The employer contends that the employee did not show up for work on April 16, 1990, and that he did not call in. The employer denies having a conversation on April 17, 1990, concerning the employee's need to recuperate.

The employee further asserts that he informed Truckstops on April 24, 1990, that his condition had not improved and that he consulted a lawyer in reference to a workers' compensation claim. On that same day, the employee noticed that he was not on the next weeks work schedule. On April 25, 1990, the employee retrieved his tool box from Truckstops for safekeeping. He attempted to contact Truckstops again on April 26, 27, and 30, 1990. The employee insists that because he had not received a full paycheck for several weeks, on May 1, 1990, he inquired concerning his eligibility to obtain food stamps. It was at this time that the employee learned that he had been fired.

The employer contends that it requested that the employee work on April 20, 1990, and that he refused. Truckstops alleges that the employee did not contact them, and that he continually neglected to return to work or

---

until after the plaintiff's employment terminated." (Emphasis supplied.)

2. The instruction given on the issue of other legitimate reasons which the employer may discharge an employee provides:

"You are further instructed that the applicable statutes do not prohibit an employer such as Defendant from discharging an employee such as Plaintiff because the employee is absent from work, even when the absence is caused by compensated injury and medical treatment.

Also, Defendant may show that the Plaintiff's discharge was for additional legitimate non-retaliatory reasons, such as Plaintiff's inability to perform assigned duties, Plaintiff's job abandonment and/or Plaintiff's bad faith pursuit of a Workers' Compensation claim."

The instruction given was taken from *Buckner v. General Motors Corp.;* 760 P.2d 803, 806–807

(Okla.1988), and *Pierce v. Franklin Elec. Co.,* 737 P.2d 921, 924 (Okla.1987). In *Buckner,* we held that after a prima facie case is established, the burden shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for legitimate non-retaliatory reasons. Two of these reasons include the employee's inability to perform the assigned duties and the bad faith pursuit of a compensation claim. In *Pierce,* we held that §§ 5–7 of title 85 do not prohibit the discharge of an employee because he is absent from work, even when the absence is caused by compensated injury and medical treatment.

3. On April 9, 1990, the doctor gave the employee a limited work release allowing limited lifting and walking for a one-week period.

4. On April 17, 1990, the doctor revised the previous work release to limited walking only.

to call in. Truckstops also contends that it was not aware that the employee had filed a workers' compensation claim until 6 to 8 weeks after his termination on May 1, 1990,[5] and that he was terminated for job abandonment.

It is undisputed that the employee, when filling out his application for employment on November 13, 1989, neglected to list a guilty plea to a March 20, 1981, felony. Furthermore, the employee listed a wife and two children as dependents on his health insurance enrollment, when in fact the woman was married to someone else at the time. These facts were not discovered by Truckstops until after Mosley was discharged. On July 13, 1990, the employee filed suit seeking compensation pursuant to 85 O.S.1981 §§ 5–7,[6] alleging retaliatory discharge for filing a workers' compensation claim. Truckstops defended, contending that Mosley abandoned

his employment by refusing to work after receiving a medical release and that the employee falsely completed his employment and health insurance applications. A jury returned a verdict in favor of the employee for $165,000.[7] Truckstops appealed the judgment arguing that the trial court improperly excluded a requested jury instruction.

■■■ The Court of Appeals reversed and remanded. It found that: 1) because the trial court failed properly to instruct the jury that evidence of an employee's misconduct should be considered in determining the amount of damages, the jury was misled; 2) that the proposed instruction should not have been given, but instead, should have stated that a claimant may recover if retaliatory motivation comprised a significant factor for the termination even when other legitimate reasons are present;[8] and 3) other legiti-

---

5. There is further dispute as to the date of termination. The employee asserts that prior to trial the employer answered interrogatories identifying an actual discharge date of April 17, 1990, for voluntary job abandonment. Truckstops contends that the employee was not terminated until May 1, 1990.

6. The 1981 version is unchanged from the 1991 version of 85 O.S.1991 § 5, see note 9, infra. Title 85 O.S.1981 § 6 provides:

> "Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee."

Section 6 was amended effective November 1, 1986. The statute remains identical to its 1981 counterpart except that it provides that exemplary or punitive awards made pursuant to this title shall not exceed $100,000.00. Section 6.1 was enacted effective November 1, 1986. This section limits the State's liability to claims filed pursuant to § 6 in accord with the Governmental Torts Claims Act, 51 O.S.1991 § 151 et seq.
Title 85 O.S.1981 § 7 provides:
> "The district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act."

Section 7 was amended effective September 1, 1990. This statute remains identical to its 1981 counterpart except that it provides, "unless otherwise provided for by law," the district courts have jurisdiction.

7. The award included $75,000 in actual damages and $90,000 in punitive damages.

8. Truckstops did not argue in the trial court, in its petition in error or in its initial merit briefs that the trial court should have instructed the jury that employee misconduct discovered after the employee was terminated should be considered as it may or should lead to a reduction, or really limitation, on the allowable damages. Some courts have sanctioned such a reduction or limitation on the allowable damages. See e.g. *Wallace v. Dunn Construction Co., Inc.*, 968 F.2d 1174 (11th Cir.1992) (although evidence of employee misconduct discovered post-termination could not serve as legitimate cause for terminating employee and, consequently, as a ground in normal circumstances for denying all relief or defeating a claim by an employee as to liability of an employer, such evidence could legitimately be considered to limit backpay and eliminate prospective remedies of front pay, reinstatement or injunctive relief). It was the majority of the Court of Appeals that on its own, reversed the jury verdict because they felt a modified version of the instruction requested by Truckstops should have been given in so far as the after-acquired evidence of grounds for termination would have an effect on damages, i.e. it might have the effect of convincing the jury to reduce or limit damages. In essence, the majority of the Court of Appeals believed it was error for the trial court to fail to give an instruction no one requested. In doing so the Court of Appeals erred because the instruction requested by Truckstops did not accurately state the law (as we decide here) and in normal circumstances reversal of a jury verdict should only be predicated on refusal to give an instruction that is correct in both form and

mate reasons may be a basis for withholding all relief from the employee or it may be the basis for reducing the amount of damages. We granted certiorari on March 15, 1993, to determine whether a jury instruction based on *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988) is consistent with Oklahoma's retaliatory-discharge jurisprudence.

## I.

### A JURY INSTRUCTION RELIEVING AN EMPLOYER OF LIABILITY FOR TERMINATING AN EMPLOYEE ENGAGED IN MISCONDUCT DISCOVERED AFTER THE EMPLOYEE IS TERMINATED IS DISCORDANT WITH OKLAHOMA RETALIATORY DISCHARGE JURISPRUDENCE AND GIVING THE INSTRUCTION IS REVERSIBLE ERROR.

The employer asserts that under 85 O.S. 1991 § 5,[9] evidence of employee misconduct should be considered by the jury in determining damages and that the jury should have been instructed as such. Truckstops insists that the Court of Appeals did not

expressly adopt *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir. 1988), but it agrees with the appellate court that a *Summers*-type instruction should have been given. The employee argues that the Court of Appeals decision is in direct conflict with our decision in *Buckner v. General Motors Corp.*, 760 P.2d 803, 810 (Okla.1988).

 Truckstops' proposed jury instruction based upon *Summers* would bar any relief to the employee, if he engaged in serious misconduct, even if the misconduct were not discovered until after the employee's termination.[10] When reviewing jury instructions, the standard of review requires the consideration of the accuracy of the statement of law as well as the applicability of the instructions to the issues. The instructions are considered as a whole.[11] In giving instructions, the trial court is not required to frame issues, but it must state the law correctly.[12]

In *Summers*, an employee filed suit against a former employer under Title VII for age and religious discrimination. The employer asserted that the reason for Sum-

---

substance. It cannot generally be based on failure to give an instruction that would have to be modified to accurately reflect the law. *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 918 (Okla. 1982). The exception to this general rule arises when a trial court wholly fails to instruct about an area covering a parties' theory of the case. *Pacific Insurance Company of New York v. Frank*, 452 P.2d 794 (Okla.1969). In that Truckstops' theory before the trial court did not include the defense damages should merely be reduced or limited by virtue of the after-acquired evidence, but that all relief should be denied, the exception does not apply and it was error for the Court of Appeals to reverse and remand for new trial based on an issue concerning an instruction Truckstops did not argue embodied its theory of the case. Accordingly, in our view, failure of the trial court on its own to give an instruction no one requested was not fundamental error and it did not probably result in a miscarriage of justice or constitute a substantial violation of Truckstops' constitutional or statutory rights, which under 20 O.S.1991, § 3001.1, would be required to set aside this jury verdict. Thus, a decision on whether such after-acquired evidence should have the effect of reducing or limiting damages in this type of case will have to await another day. Such issue was not properly before the trial court or the Court of Appeals and such issue is not properly before us.

9. Title 85 O.S.1991 § 5 provides:

"No person, firm, partnership or corporation may discharge an employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties."

Section 5 was amended effective September 1, 1992. The new statute does not allow an employer to discharge an employee during a period of temporary total disability solely on the basis of absence from work.

10. See discussion note 1, supra.

11. *Cimarron Feeders v. Tri–County Elec. Coop., Inc.*, 818 P.2d 901, 902 (Okla.1991); *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121, 129 (Okla.1984).

12. *Smicklas v. Spitz*, 846 P.2d 362, 367 (Okla. 1992); *Sellars v. McCullough*, 784 P.2d 1060, 1069 (Okla.1990).

mers' termination was a bad attitude and a poor rapport with co-workers and customers. Before being fired, Summers had been placed on probation for falsifying several claims documents; and he was warned that he would be fired if he engaged in further falsifications. Four years after discharging the employee, the former employer discovered 150 instances in which the employee had falsified company records. The employer argued that the 150 falsifications, unknown at the time of discharge, should be considered in determining the remedy available to the employee.

The Tenth Circuit agreed with the employer, holding that "while after-acquired evidence cannot be said to have been a 'cause' for Summers' discharge in 1982, it is relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." Thus, the *Summers* case fashioned a rule that an employer may avoid all liability for a discharge based solely on unlawful motives by proving that it would have discharged the worker if it had possessed full knowledge of the circumstances existing at the time of the discharge.

While the Court of Appeals recognized that *Summers* differed factually from the present action, the Court found that the same issue was presented: whether an employee should be allowed to recover for wrongful termination when it is later discovered that the worker committed misconduct which would warrant termination. Although, the Court of Appeals recognized that *Summers* was not precedential authority, it found that it was highly persuasive and that it should be incorporated into Oklahoma's retaliatory discharge law.[13]

The *Summers* rationale has not been extended beyond the context of civil rights employment discrimination violations.[14] The purpose of workers' compensation claims differ from civil right employment discrimina-

---

**13.** *Phillips v. Williams*, 608 P.2d 1131, 1135 (Okla.1980) *cert. denied, Shabazz v. Williams*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980) (Pronouncement on a federal law question by an inferior federal court is not necessarily binding on a State Supreme Court, but it is highly persuasive.). The question before us is not one of federal law, but rather one of state statutory law.

**14.** Post-termination discovery of employee misconduct has traditionally been no defense in employee's claim of discrimination. Shea, "Post-termination Discovery of Employee Misconduct: A New Defense in Employment Discrimination Litigation," 17 Empl.Rel.L.J. 103 (1991). *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988), involved falsification of company records; however, courts have applied *Summers* in contexts of employee misconduct in an employment discrimination action. Some courts have adopted *Summers* and allowed relief of liability if the employer could show that it would have discharged the employee had it known about the after-acquired evidence of employee misconduct. *DeVoe v. Medi–Dyn, Inc.*, 782 F.Supp. 546, 552 (D.Kan.1992); *O'Day v. McDonnell Douglas Helicopter Co.*, 784 F.Supp. 1466, 1468 (D.Ariz.1992). Other courts have merely limited the employee's possible remedies. *Wallace v. Dunn Const. Co., Inc.*, 968 F.2d 1174, 1181–83 (11th Cir.1992) (After-acquired evidence that employee lied on job application affects reinstatement or front pay, injunctions against further unlawful practices, and may reduce an award of attorney fees; it would not affect availability of declaratory relief for Title VII claims, nominal damages for hostile-environment sexual harassment claim, or liquidated damages.); *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1360 (7th Cir.1989) (Circumstances surrounding questionable ethical conduct may be relevant to injunctive relief, even if not discovered until after the termination.).

*Summers* has been applied in cases involving omissions or misrepresentations on job applications as well. *Johnson v. Honeywell Information Sys., Inc.*, 955 F.2d 409, 415 (6th Cir.1992); *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1298 (7th Cir.1992). Some courts have denied the worker relief if either the employer would not have hired the worker absent the misrepresentation or if the employer would have discharged the worker if the misrepresentation had been discovered during employment. *Washington v. Lake County, Ill.*, 762 F.Supp. 199, 202–203 (N.D.Ill.1991); *Churchman v. Pinkerton's Inc.*, 756 F.Supp. 515, 521 (D.Kan.1991); *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991, 994–95 (D.Kan. 1989). Others have only inquired whether the employee would be discharged had the misrepresentation been discovered during employment. *Bonger v. American Water Works*, 789 F.Supp. 1102, 1106–07 (D.Colo.1992); *O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656, 659 (D.Utah 1990). At least one court refused to apply a *Summers* rationale to preclude an employee who falsified his resume when applying for employment from establishment of a prima facie case for an action under the Age Discrimination in Employment Act. *Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1319 (7th Cir.1989).

tion claims.[15] Title 85 O.S.1991 § 5 protects the right of employees to assert claims for compensation without fear of reprisal or retaliation by employers. Applying a *Summers* instruction to workers' compensation claims violates public policy by allowing employers to circumvent the established workers' compensation structure.[16] Furthermore, by narrowly focusing on what may have been legitimate reasons for termination which surfaced after termination or after a suit had commenced, the jury would be distracted from the real issue of the case—the retaliatory motive of the employee's termination.[17]

We have never applied the *Summers* rationale to a retaliatory discharge action based on 85 O.S.1991 § 5. In *Buckner v. General Motors Corp.*, 760 P.2d 803, 806 (Okla.1988), this Court adopted jurisprudence developed in the law of employment discrimination pertaining to order and burdens of proof under 85 O.S.1981 § 5.[18] In *Buckner*, we stated that the federal court standards we were adopting only applied to the specified principles discussed within the opinion. We further recognized that the principles we adopted were not to signal the wholesale adoption and application of federal law of employment discrimination to retaliatory discharge claims brought under § 5.

The rule of law concerning retaliatory motivations under § 5 is stated in *Thompson v. Medley Material Handling, Inc.* 732 P.2d 461, 463 (Okla.1987). In *Thompson*, we held that when retaliatory motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of § 5. This holding was reaffirmed in *Buckner*.[19]

The employee relies on *Mantha v. Liquid Carbonic Indus.*, 839 P.2d 200, 203 (Okla. App.1992) to illustrate how Truckstops instruction would clearly violate principles set forth in *Buckner* and *Thompson*. The facts of *Mantha* are substantially similar to those presented here. The *Mantha* Court recognized that a ruling which would allow post-termination reasons for the employee's discharge to bar an employee's right to recover, regardless of the employer's wrongful conduct, would stand in direct conflict with our holdings in *Buckner* and *Thompson*. Even though it is not controlling,[20] *Mantha* is illustrative of the point that Truckstops' assertions are inconsistent with established Oklahoma precedent. An instruction based on *Summers* would absolve an employer upon a mere showing that the employer may have had a legitimate basis for discharge, **even if it were not a significant factor in the employer's decision to terminate.** This position is clearly inconsistent with Oklahoma retaliatory jurisprudence. The proposed instruction inaccurately states the applicable law. Because a jury instruction relieving an employer of liability for terminating an employee engaged in misconduct discovered af-

15. One purpose of civil rights employment discrimination is to achieve equality of employment opportunity to members of a constitutionally protected class or engaged in protected conduct. *Wallace v. Dunn Const. Co., Inc.*, 968 F.2d 1174, 1180 (11th Cir.1992).

16. *Wright v. Fiber Indus.*, 60 N.C.App. 486, 299 S.E.2d 284, 287 (1983); Annot., "Recovery for Discharge from Employment in Retaliation for Filing Workers' Compensation Claim," 32 A.L.R.4th 1221, 1224–25 (1984).

17. See, *Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1317 (7th Cir.1989) (Narrowly focusing on the plaintiff's initial burden distracts the district court from the real issue of the case—lawfulness of the termination.).

18. The 1981 version is unchanged from the 1991 version of 85 O.S.1991 § 5, see note 9, supra.

19. Other courts have similarly recognized the *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 463 (Okla.1987) and *Buckner v. General Motors Corp.*, 760 P.2d 803, 810 (Okla.1988) rationale. *White v. American Airlines, Inc.*, 915 F.2d 1414, 1421 (10th Cir.1990) (In order to fall within a public policy exception to the employment at-will doctrine, a discharge must be significantly motivated by the employee's refusal to violate established public policy.); *Abramson Assoc. v. Department of Emp. Serv.*, 596 A.2d 549, 553 (D.C.App.1991) (An employee's informal reporting of work-related injuries as an attempt to claim compensation advances the purpose of workers' compensation by preventing retaliation by the employer.).

20. *Mantha v. Liquid Carbonic Indus.*, 839 P.2d 200, 203 (Okla.App.1992) was not approved for publication by this Court; and it has no precedential value pursuant to 20 O.S.1991 § 30.5.

ter the employee is terminated is contra to the beaten track of Oklahoma law, we find that giving the instruction is reversible error.

## II.

### THE INSTRUCTIONS GIVEN WERE CONSISTENT WITH OKLAHOMA RETALIATORY DISCHARGE LAW.

The employer asserts that without the requested instruction, the jury was misled as to the legal significance of the employee's misconduct. Truckstops insists that the jury heard evidence regarding Mosley's admitted falsifications of his employment application and his health insurance form, and that without the proposed instruction it could not fully consider the employee's misconduct contrasted to his claim for relief. The employee contends that the instructions that were given allowed the jury to fully consider evidence of his misconduct.

■■■■■ Instructions are explanations of the law of a case which enable a jury to understand its duty and to arrive at a correct conclusion.[21] The instructions need not be ideal, but they must reflect the Oklahoma law regarding the subject at issue.[22] The employee brought an action for retaliatory discharge for filing a workers' compensation claim. The rule of law concerning retaliatory discharge is stated in *Buckner v. General Motors Corp.*, 760 P.2d 803, 810 (Okla.1988). In summarizing this Court's previous decisions concerning retaliatory discharge we noted in *Buckner* that *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 463–

64 (Okla.1987); *Elzey v. Forrest*, 739 P.2d 999, 1002–03 (Okla.1987); and *Pierce v. Franklin Electric Co.*, 737 P.2d 921, 924 (Okla.1987) stand for the following propositions: 1) that the protection of § 5 is limited to good faith actions taken by an employee who has suffered a work-related injury; 2) that an employer may, without incurring tort liability, discharge an employee who is physically unable to perform job duties; 3) that the employee must offer evidence to establish circumstances giving rise to a legal inference that discharge was significantly motivated by retaliation for the exercise of statutory rights; and 4) that if retaliation motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of § 5.

Here, the jury was instructed that: 1) the burden is on the employee to establish by a preponderance of the evidence the elements necessary to establish a claim under § 5;[23] 2) the defendant may discharge an employee because an employee is absent from work, even when the absence is caused by injury and medical treatment; and 3) the defendant may show the employee's discharge was for additional legitimate, non-retaliatory reasons.[24]

■■■■■ The standard of review is whether there is a probability that the jury was mislead and thereby reached a different result than it would have reached but for the error.[25] Where there is any competent evi-

---

21. *Smicklas v. Spitz*, see note 12 at 367, supra.

22. *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1297 (10th Cir.1989); *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 189 (Okla.1992).

23. The jury instruction given on the issue of the establishment of a claim under Title 85 O.S.1981 § 5, see note 9, supra, provides:

"To establish a claim under Section 5 of the Workers' Compensation Act against the defendant, the burden of proof is upon the Plaintiff to establish the following by a preponderance of the·evidence:
(1) Employment of Plaintiff by the Defendant;
(2) Plaintiff sustained an on-the-job injury;
(3)(a) Plaintiff received treatment for such injury under circumstances which put the Defen-

dant employer on notice that treatment had been rendered for a work-related injury, or (3)(b) Plaintiff in good faith instituted, or caused to be instituted, proceeding under Workers' Compensation Act (85 O.S.1981 § 1 et. seq), and
(4) Plaintiff's consequential discharge from employment by Defendant, that is, Plaintiff must establish by a preponderance of evidence circumstances giving rise to an inference that discharge was **significantly motivated** by retaliatory exercise of statutory rights." (Emphasis supplied.)

24. See discussion note 2, supra.

25. *Ankney v. Hall*, 764 P.2d 153, 155 (Okla. 1988); *Woodall v. Chandler Material Co.*, 716 P.2d 652, 654 (Okla.1986).

dence reasonably tending to support the verdict of the jury, this Court will not disturb the verdict and judgment.[26] The testimony and evidence at trial established circumstances which gave rise to a legal inference that the discharge was significantly motivated by retaliation for exercising statutory rights. Mosley testified that Truckstops informed him that if he filed a workers' compensation claim he could be fired for not following Truckstops' procedure. The employee presented evidence through phonebills and the employer's written work schedules that he had contacted Truckstops about taking off work to recuperate. There is also dispute as to the actual date of termination.[27] Under these circumstances—contradictory testimony of both parties and the dispute over the timing of the employee's termination—a retaliatory motive may have been suggested. It was for the trier of fact, in this case the jury, who observed the demeanor of the witnesses and heard their testimony, to decide the credibility of the witnesses and the effect and weight to be given conflicting or inconsistent testimony.[28] Because a jury instruction based upon *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700, 708 (10th Cir.1988) is not consistent with Oklahoma retaliatory discharge law, we cannot say that a jury relying on the instruction given may have reached a different result had the instruction been worded differently.[29]

## CONCLUSION

This Court has promulgated decisions related to employment discrimination under 85 O.S.1991 § 5. We have not adopted a *Summers* rationale, nor has *Summers* been extended to workers' compensation actions. Applying a *Summers*-based jury instruction to retaliatory discharge actions would clearly violate established Oklahoma retaliatory jurisprudence. A jury instruction which relieves an employer of liability for terminating an employee engaged in misconduct discovered **after** the employee was terminated is inopposite to Oklahoma law and giving the instruction is reversible error.

Testimony and evidence presented at trial may have suggested a retaliatory motive. Because the instructions that were given fairly reflected Oklahoma retaliatory discharge law, we cannot say that a jury relying on the instructions given would have been misled or reached a different result had the instructions been worded differently.

We do not affirm the trial court judgment. Instead we remand the cause to the Court of Appeals. We do so because, in addition to the instruction issue, Truckstops challenged on appeal the propriety of awarding punitive damages. Because the Court of Appeals reversed and remanded based on the instruction issue, the issue of punitive damages was not visited. We note that our recent decision in *Hough v. Leonard,* 867 P.2d 438, 445–446 (Okla.1993) revising Rule 3.15 of the Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, 12 O.S.Supp.1993, Ch. 15, App. 3, is not applicable to the instant cause. *Hough* and the revised rule provide that should we vacate an opinion of the Court of Appeals, we may address the matters not decided or remand for determination of issues left unresolved by the Court of Appeals' decision. Prior to the revision of Rule 3.15, this Court had followed two procedures on certiorari. *Johnson v. Wade,* 642 P.2d 255, 257 (Okla.1982) required any party desiring review of the Court of Appeals' decision, whether "winner" or "loser", to petition for certiorari. In *Handy v. City of Lawton,* 835 P.2d 870, 874 (Okla.1992) and *Athey v. Bingham,* 823 P.2d 347, 350–351

**26.** *Hart v. McVay,* 832 P.2d 822, 824 (Okla.1992); *Eversole v. Oklahoma Hosp. Founders,* 818 P.2d 456, 459 (Okla.1991); *Walker v. St. Louis–San Francisco Ry. Co.,* 646 P.2d 593, 597 (Okla. 1982).

**27.** See discussion, note 5, supra.

**28.** *Central Plastics Co. v. Goodson,* 537 P.2d 330, 335 (Okla.1975).

**29.** Title 20 O.S.1991 § 3001.1 provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

(Okla.1991), the causes were remanded to the Court of Appeals for adjudication of assignments of error left unresolved. Today, we invoke the doctrine of *Handy & Athey* and exercise our discretion to remand the punitive damages issue to the Court of Appeals for adjudication. We express no view as to the merits of the issue nor as to the extent of Truckstops' preservation of arguments in regard thereto.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED IN PART AND MATTER REMANDED TO COURT OF APPEALS FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

LAVENDER, V.C.J., and HARGRAVE, SUMMERS and WATT, JJ., concur.

SIMMS, OPALA and ALMA WILSON, JJ., concur in part and dissent in part.

HODGES, C.J., dissents.