2002 OK CIV APP 31

**Vern Brooke KEDDINGTON,
Plaintiff/Appellant,**

v.

**CITY OF BARTLESVILLE,
Defendant/Appellee.**

**No. 96,221.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

Dec. 7, 2001.
Certiorari Denied Feb. 20, 2002.

Rick W. Bisher, Donna E. Dukes Mason, Boettcher, Ryan & Martin, Oklahoma City, OK, for Appellant.

James E. Elias, John M. Keefer, Brewer, Worten, Robinett, Bartlesville, OK, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Plaintiff/Appellant Vern Brooke Keddington (Employee) seeks review of the trial court's order granting the motion for summary judgment of Defendant/Appellee City of Bartlesville (City) and denying Employee's motion for partial summary judgment on Employee's retaliatory discharge claim under the Oklahoma Workers' Compensation Act (WCA), 85 O.S. § 1, et seq., § 5. In this accelerated review proceeding,[1] Employee asserts the trial court erred in granting City's motion for summary judgment, the evidentiary materials minimally demonstrating the existence of a controversy of material fact concerning the cause for his discharge; Employee also asserts the trial court erred in denying his motion for partial summary judgment, his evidentiary materials uncontrovertedly demonstrating his discharge by City for absenteeism attributable to compensated temporary total disability, strictly proscribed by 85 O.S. § 5 (B).

¶ 2 Employee worked for City as a Street Department Sign Technician. His duties required him to both stand for long periods, and climb ladders.

¶ 3 City's personnel policy limited "injury leave" to one hundred and eighty (180) days beginning "the day after the injury is sustained." Upon expiration of that period, City's policy granted the City Manager the discretion to allow additional "extended injury leave for a specified time period," terminable "if . . . it is determined by a physician that the injured employee is *permanently disabled* and shall not be able to return to work." (Emphasis added.)

¶ 4 In May 1997, Employee sustained a job-related injury for which he sought workers' compensation benefits, and City paid him benefits for temporary total disability (TTD) beginning on June 16, 1998.[2] Employee did not return to work after that date.

---

1. The matter stands submitted on the trial court record under Rule 13(h), Rules for District Courts, 12 O.S. Supp.1993, Ch. 2, App., and Rule 1.36, Oklahoma S Court Rules, 12 O.S. Supp. 1997, Ch. 15, App.

2. According to City's Form 10, filed in Employee's workers' compensation case in late October 1999.

¶ 5 In February 1999, Employee met with the City Manager and the City Human Resources Manager to discuss his medical condition and anticipated return to work. At that time, Employee tendered a doctor's statement certifying his current ability "to perform all duties ... with ... restrictions," particularly, "1 hour maximum standing [in] AM[,] 1 hour max[imum] standing [in] PM [and] no climbing ladders," with a "prognosis for complete recovery" "unknown at this time."

¶ 6 By letter dated April 14, 1999, City wrote to Employee:

... It is not fair for us to ask those employees working at full capacity to fill in indefinitely for employees who, due to work-related or non-work-related illnesses or injuries, are absent or in light-duty status. That period should not exceed six months under any circumstance. It is important that we now evaluate whether you are currently able, or will soon be able, to return to unrestricted work.

On April 27, 1999 at 2:00 p.m. the City Manager will conduct a hearing in his office regarding your working status. You are required to appear at that time to discuss your physical condition and ability to perform unrestricted work. It is your responsibility to bring with you current information from your treating physician that includes a prognosis for complete recovery.....

If the City Manager determines at the hearing that you are capable of performing at full capacity, then you will be directed to return to work. However, if information indicates that we cannot reasonably expect you to be fit for unrestricted duty within six months of your first absence, then steps may be taken to terminate your employment due to physical inability to perform your assigned duties.

At the hearing, City considered a statement of Employee's physician, substantially identical in terms to the earlier February statement, but also reporting surgery to be performed on May 4. During a telephone conference in late May, despite some assurance that "there should be no limitations ... substantially affect[ing] his job duties" after a six- to eight-week convalescence from the latest surgery,[3] City announced its decision to terminate Employee due to "his inability to perform his job ... duties."[4]

¶ 7 In March 2000, Employee filed his petition, asserting City's termination of his employment in violation of the WCA, 85 O.S. § 5, and reciting compliance with the Oklahoma Governmental Tort Claims Act, 51 O.S. §§ 151, et seq. City answered, denying liability.

¶ 8 In December 2000, City filed a motion for summary judgment. In support, City presented evidentiary materials argued to show Employee's termination due to his inability to perform the duties of his position, a permitted cause for discharge under 85 O.S. § 5 (C).[5]

¶ 9 Employee responded, and objected to City's motion for summary judgment; Employee also filed a motion for partial summary judgment in his favor. In support, Employee presented evidentiary materials argued to show termination of his employment due to his temporary absence from work in excess of that permitted by City's injury leave policy, but during a period of documented TTD as the result of an accidental injury arising out of and in the course of his employment with City for which he was receiving TTD benefits.

¶ 10 Accordingly, said Employee, the evidentiary materials demonstrated a proscribed termination of his employment under 85 O.S. § 5 (B),[6] demanding partial summary

---

3. Apparently performed on May 5.

4. City also expressed a conditional offer of re-employment "whenever it is ... down the line, should he recover and we have a slot available that meets his qualifications."

5. "No person, firm, partnership, corporation, or other entity shall be required to rehire or retain

any employee who is determined to be physically unable to perform assigned duties. The failure of an employer to rehire or retain any such employee shall in no manner be deemed a violation of this section."

6. "No person, firm, partnership, corporation, or other entity may discharge any employee during

judgment in his favor. *See also, Upton v. State ex rel. Dept. of Corrections,* 2000 OK 46, ¶ 8, *9 P.3d 84,* 87.[7] At a minimum, Employee argued, the evidentiary materials demonstrated a controversy of material fact concerning cause for his discharge-whether solely for his absence from work, or for his alleged inability to perform his assigned duties-demanding denial of City's motion for summary judgment.

¶ 11 City responded to Employee's motion for partial summary judgment, and presented other evidentiary materials—post-dating the termination—which City argued to show Employee's permanent inability to perform the duties for which he had been hired,[8] justifying his termination under 85 O.S. § 5 (C). Employee objected to the introduction of the other evidence as acquired after his termination, and not relevant to the question of City's motives or knowledge of Employee's physical condition at the time of the termination. *Mosley v. Truckstops Corp. of America,* 1993 OK 79, ¶¶ 13, 21, 891 P.2d 577, 583, 584.

¶ 12 On consideration of the arguments and submitted materials, the trial court granted City's motion for summary judgment, and denied Employee's motion for partial summary judgment. Employee filed a motion for new trial, which the trial court denied, and Employee appeals.

■ ¶ 13 Section 5(A) of the WCA "protects the right of employees to assert claims for compensation without fear of reprisal or retaliation by employers." *Mosley,* 1993 OK 79, ¶ 13, 891 P.2d at 583. *See also, Buckner v. General Motors Corp.,* 1988 OK 73, 760

P.2d 803; *Thompson v. Medley Material Handling, Inc.,* 1987 OK 2, 732 P.2d 461. "[W]hen retaliatory motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of § 5[A]." *Mosley,* 1993 OK 79, ¶ 15, 891 P.2d at 583.

¶ 14 In this respect, the Oklahoma Supreme Court has observed that evidence of "what may have been legitimate reasons for termination which surfaced after termination or after a suit had commenced . . . distract[s] from the real issue of the case-the retaliatory motive of the employee's termination." *Mosley,* 1993 OK 79, ¶ 13, 891 P.2d at 584. The Oklahoma Supreme Court consequently held that "[a] jury instruction which relieves an employer of liability for terminating an employee engaged in misconduct discovered *after* the employee was terminated is inopposite to Oklahoma law," and a trial court commits reversible error in so instructing. *Mosley,* 1993 OK 79, ¶ 21, 891 P.2d at 584. (Emphasis original.)

■ ¶ 15 Given this framework, we further observe that the term "temporary total disability" refers to "the healing period, or that period of time following accidental injury when an employee is totally incapacitated for work due to" a job-related injury. *See, e.g., Bodine v. LA King Corp.,* 1994 OK 22, ¶ 9, 869 P.2d 320, 322; *Bama Pie, Inc. v. Roberts,* 1977 OK 100, ¶ 12, 565 P.2d 31, 34. The plain language of § 5(B) thus clearly proscribes the absence-based termination of an

---

a period of temporary total disability solely on the basis of absence from work."

7. "Doubtless, . . . [§ 5(B)] evince[s] legislative intent that a claimant [is] to be accorded protection from discharge based solely upon absenteeism while receiving TTD—i.e., during the 'healing' period," and:

  To the extent that the provisions of [74 O.S.] § 840–2.21 (D) [authorizing termination of an employee who "does not return to the original position or an alternate position within 1 year after the start of leave without pay"] can be construed to permit an employee's discharge while he/she is receiving TTD, an *irreconcilable* conflict exists between § 840–2.21(D) and

§ 5(B). Because the later-in-time amendment of § 5[ (B) ] reflects the most recent legislative pronouncement regarding absenteeism-based termination of employees-be they private or public-who are receiving TTD, the former is repealed by implication, but only to the extent of any inconsistency.

8. Particularly, a Form 5, Release from Treatment, filed in Employee's workers' compensation case in November 1999—some seven months after the termination of employment in May 1999—certifying attainment of maximum medical improvement but imposing permanent physical restrictions limiting Employee's ability to stand for more than two hours a day, and to climb ladders.

employee receiving TTD pursuant to the WCA. *Upton,* 2000 OK 46, ¶ 8, 9 P.3d at 87.[9]

¶ 16 City nevertheless argues that pursuant to § 5(C), it incurs no liability for termination of an employee, even though receiving TTD, if during the TTD-related absence, the employee is also "determined to be physically unable to perform assigned duties." *See, Wiles v. Michelin North America, Inc.,* 173 F.3d 1297 (10th Cir.(Okla.) 1999); *Taylor v. Pepsi–Cola Company,* 196 F.3d 1106 (10th Cir.(Okla.) 1999). However, the Supreme Court in *Upton—after* the 10th Circuit decisions in *Taylor* and *Wiles*—unequivocally held § 5(B) proscribes the absence-based termination of an employee receiving TTD benefits pursuant to the WCA.

■ ¶ 17 We must construe as a harmonious whole the various provisions of § 5, giving effect to each. *See, e.g., Bryant v. Com'r of Dept. of Public Safety,* 1996 OK 134, ¶ 11, 937 P.2d 496, 500 [10]; *Prettyman v. Halliburton Co.,* 1992 OK 63, ¶ 20, 841 P.2d 573, 580.[11] In this respect, to adopt City's argument and construe § 5(C) as permitting termination of an employee receiving WCA benefits for TTD-by definition incapable of

remunerative labor during convalescence from a job-related injury-because the employee cannot perform ·assigned duties "severely undermine[s] the intended objective[s] of" § 5(A) and (B). *Pierce v. Franklin Elec. Co.,* 1987 OK 34, ¶ 16, 737 P.2d 921, 925.[12] We accordingly cannot, as a matter of either law or statutory construction, apply the permitted termination provisions of § 5(C) to render meaningless the proscribed termination provisions of § 5(B).

■ ¶ 18 However, if we construe § 5(B) as a limitation on the operation of § 5(C), the two provisions are given harmonious effect. That is, § 5(A) prohibits "because of" discharges in retaliation for the actual or anticipated assertion of rights under the WCA, while § 5(B) plainly prohibits the termination of an employee while receiving WCA-authorized TTD due solely to absence from work. *Upton,* 2000 OK 46, ¶ 8, 9 P.3d at 87. Section 5(C) just as plainly permits the termination of an employee either determined physically unable to perform assigned duties, or "for reasons unrelated to the filing of a compensation claim." *See, Hall v. Noble Public Schools,* 1993 OK 20, ¶¶ 5, 6, 848 P.2d 1157, 1158.[13] We consequently hold that

**9.** Footnote 5, *supra.*

**10.** "Statutes must be read to render every part operative, and to avoid rendering it superfluous or useless."

**11.** "In the construction of statutes it is axiomatic that the statute as amended is to be construed as a consistent whole, in harmony with common sense and reason and that every part should be given effect; that amendments are to be construed together with the original act to which they relate as constituting one law and also together with other statutes on the same subject as part of a coherent system of legislation."

**12.** At all times relevant in *Pierce,* § 5 provided in pertinent part:

No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has ... instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. *Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties.*

85 O.S.1981 § 5. (Emphasis added.) As a matter of statutory interpretation, the Oklahoma Su-

preme Court observed that this version of § 5 "d[id] not expressly provide injured employees with an excused work absence during their healing period, and [held § 5] d[id] not prohibit the discharge of an employee because he is absent from work, even when the absence is caused by compensated injury and medical treatment." 1987 OK 34, ¶ 7, 737 P.2d at 923–924. However, the Supreme Court continued:

We do not hold today that an employer may discharge a disabled employee with impunity. A totally disabled employee is by definition *"physically unable to perform"* his job and to exclude absolutely such worker from the protection of the § 5 shield against retaliatory discharge would severely undermine the intended objective of the statutory scheme.... We do not today decide the case in which retaliatory motivation plays a significant part in an employer's decision to discharge a temporarily disabled worker or in which the employee is permanently disabled.

1987 OK 34, ¶ 16, 737 P.2d at 925. (Emphasis original.) (Footnotes omitted.)

**13.** "[O]ur reference in [*WRG Construction Co. v.*] *Hoebel,* [1979 OK 125, 600 P.2d 334] to an employer's refusal to 'rehire' or 'retain' was never intended to refer to a situation where an employee was laid off for reasons unrelated to

while an employer may not terminate an employee receiving TTD pursuant to the WCA under § 5(B), once the employee's TTD healing period has ended, and the employee is determined to suffer some permanent physical disability which prevents the discharge of assigned duties for the employer, the employer bears no § 5 liability for then terminating the employee under § 5(C).[14]

¶ 19 In the present case, Employee and City presented evidentiary materials demonstrating a termination decision in May 1999, after Employee's TTD-related absence from work exceeding the City's 180 day limit on "injury leave," and apparently during a period of "extended injury leave" permitted by City policy. However, the evidentiary materials also uncontrovertedly showed then-available objective facts of *only* Employee's *temporarily* restricted capacity to perform his assigned duties, *not* some *permanent* impairment to the full discharge of his employment functions.

¶ 20 The uncontroverted facts consequently demonstrate a strictly proscribed § 5(B) termination as we have construed it. However, the uncontroverted facts also demonstrate no § 5(A) proscribed, "because of" retaliatory discharge as a result of Employee's assertion of rights under the WCA.

¶ 21 The order of the trial court granting City's motion for summary judgment and denying Employee's motion for partial summary judgment is therefore REVERSED, and the cause REMANDED for entry of orders (1) granting Employee's motion for partial summary judgment on his § 5(B) claim, and (2) an order granting City's mo-

tion for summary judgment on Employee's § 5(A) claim.

¶ 22 ADAMS, P.J., concurs; JONES, J., dissents.

---

the filing of a compensation claim"; "neither [§ 5] nor case law holds there is a duty to 'rehire' or 'retain.' "

14. Assuming a fact-finder might determine the employer wrongfully terminated an employee under § 5(B), it would appear that § 5(C) might also be properly invoked as a limitation on dam-

ages to that period between the proscribed § 5(B) termination and a permitted § 5(C) termination upon notice of an employee's maximum medical improvement, and a showing of some permanent—not merely temporary—inability to perform his assigned duties.