**2015 OK CIV APP 91**

**Connie KEEVER, Plaintiff/Appellant,**

**v.**

**BIG LOTS STORES, INC., a Foreign Corporation, Defendant/Appellee.**

**No. 113,277.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 30, 2015.

Donald E. Smolen, Smolen, Smolen & Roytman, PLLC, Tulsa, OK, for Plaintiff/Appellant.

Paula Quillin, Franden, Woodard, Farris, Quillin, & Goodnight, Tulsa, OK, for Defendant/Appellee.

WM. C. HETHERINGTON, Jr., Chief Judge.

¶ 1 Plaintiff Connie Keever appeals a trial court order granting the motion for summary judgment filed by Defendant Big Lots Stores, Inc. (Big Lots), on Keever's retaliatory discharge petition. Based on review of the evidentiary material presented to the trial court, we affirm the order.

## STANDARD OF REVIEW

¶ 2 In determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Big Lots was entitled to judgment as a matter of law. *Perry v. Green*, 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Keever. *Ross v. City of Shawnee*, 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company*, 1985 OK 25, 698 P.2d 17.

¶ 3 This appeal is governed by and follows the procedure set forth in Oklahoma Supreme Court Rule 1.36, 12 O.S.2011, ch. 15, app. 1, without appellate briefing. The appellate standard of review for a trial court's grant of summary judgment is *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. When one party is entitled to judgment as a matter of law because there are no material disputed facts, summary judgment will be affirmed. *Id.* A fact is "material" if proof of that fact would have the effect of establishing or refuting one of the essential elements of the cause of action. *Buck's Sporting Goods, Inc. v. First National Bank & Trust Co.*, 1994 OK 14, ¶ 11, 868 P.2d 693, 698. To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action. *Akin v. Missouri Pacific R. Co.*, 1998 OK 102, ¶ 9, 977 P.2d 1040.

¶ 4 A discharged employee must establish the following elements of a *prima facie* case for retaliatory discharge against an employer: (1) plaintiff was employed by the defendant; (2) sustained an on-the-job injury; (3) received treatment under circumstances which put the employer on notice that treatment has been rendered for a work-related injury, or that the employee, in good faith, instituted proceedings under the Workers' Compensation Act; and (4) consequent termination of employment. *Buckner v. General Motors Corp.*, 1988 OK 73, ¶ 9, 760 P.2d 803, 806.

¶ 5 If the employee carries this initial burden, the burden of production shifts to the employer, allowing it to rebut the inference of a retaliatory motive by producing relevant and credible evidence that it had a legitimate non-retaliatory reason for the employee's discharge, *e.g.*, "employee's inability to perform the assigned duties or the bad faith pursuit of a compensation claim." *Buckner*, ¶¶ 10–11. If the employer's burden of production is met, the burden of persuasion, which always remains with the employee, may be successfully met either *"directly* by persuading the court that the discharge was *significantly motivated by retaliation* for [the employee's] exercise of statutory rights, or *indirectly* by showing that the employer's proffered explanation is unworthy of credence." *Id.*, ¶ 11, 760 P.2d at 807.

## FACTS

¶ 6 Keever's petition filed in August 2010 alleges she sustained an accidental injury arising out of and in the course of her employment with Big Lots on or about February 9, 2009, she verbally notified her supervisor about the injury, was sent for treatment, and eventually filed a claim with Big Lots' workers' compensation insurance carrier. She alleges Big Lots "subsequently terminated her for exercising the rights afforded to her under the Oklahoma Workers' Compensation Act" and that her termination "was in direct violation of ... Title 85, § 5." As a result of the claimed wrongful termination, Keever alleged she suffered damages, including lost wages, in excess of $75,000.00. She also alleged Big Lots acted in reckless disregard of her rights and with full knowledge of the severe adverse consequences of its actions upon her and requested punitive damages in excess of $75,000.00.

¶ 7 Big Lots filed a qualified entry of appearance and an Answer in September 2010, admitting in the latter Keever's employment, her February 9, 2009 injury, and subsequent termination. It also denied notification of her injury that same day, her termination occurred while she was still receiving treatment, and the allegations of wrongful termination and damages. Big Lots raised as one of several affirmative defenses that Keever was terminated for poor performance documented before and after her workers' compensation claim.[1]

¶ 8 For reasons unclear from the accelerated record, there was no activity in the matter shown of record between the filing of Big Lots' Answer and its motion for summary judgment and Brief on March 21, 2014.[2] In said motion, Big Lots argued Keever was terminated from her position of assistant manager 1) pursuant to "85 O.S. § 5(C)" after she could not physically perform her job, and "regardless," 2) for poor performance documented both before her injury and after her workers' compensation claim. Big Lots attached numerous evidentiary materials to support its arguments.

¶ 9 Keever opposed Big Lots' summary judgment motion, attaching additional evidentiary material to support her challenge of its alleged reasons for her termination. The majority of Keever's evidentiary material includes performance appraisals and pay raise documentation during her first seven years employment (May 1999 through October 2006) as a bookkeeper for Big Lots. Big Lots filed a reply, primarily arguing[3] Keever's early performance appraisals are irrelevant since it had never contested she was a good bookkeeper and she admitted during deposition being reprimanded for a bad attitude while in that position and also for not meeting her job expectations while an assistant manager.

¶ 10 The trial court filed an "Order Granting Summary Judgment" in favor of Big Lots on September 11, 2014, which it entered, according to its recitations, after hearing held August 14, 2014,[4] with both parties present with counsel, and "upon review of the briefs and after oral argument." Keever's appeal followed.

## ANALYSIS

¶ 11 The trial court ruled in favor of Big Lots, finding "[Keever's] doctor issued a written report on September 10, 2014 that stated [she] had reached maximum medical recovery and was released from

---

1. We note for the record one of Big Lots' affirmative defenses, "[Keever] has no *standing* to assert any claim on behalf of all employees of the company as attempted in her petition." However, said reference is found only in "Count II Punitive Damages" under which Keever alleges "Defendant acted in reckless disregard of the rights of [Keever] and *all employees of the company.*" In Oklahoma, "a claim for punitive damages cannot be a separate and independent cause of action, but is only incidental or collateral to the claim for actual damages." *Smith v. Warehouse Market, Inc.*, 1978 OK 125, ¶ 10, 586 P.2d 724, 726. Because Keever seeks only her own "actual damages" resulting from Big Lots' alleged wrongful termination, standing is not an issue in this case.

2. Neither of Big Lots' pleadings under Tabs 2 and 3 of the Accelerated Record, *i.e.*, "Qualified Entry of Appearance" and "Answer" nor its Motion for Summary Judgment and Brief under Tab 4 have a district court file stamp. Because the Accelerated Record also lacks an appearance docket required under Okla.Sup.Ct.R. 1.36(c)(A)(8), this filing information was obtained from the On Demand Court Records from Washington County, *http://www.odcr.com*.

3. Big Lots contends Keever's position in her workers' compensation claim concerning her physical ability to do her job is inconsistent with her position in her wrongful termination case, but cites no supporting authority. Argument without support authority will not be considered. Okla. Sup. Ct. R. 1.11(k)(1). Big Lots also argues "the workers' compensation court disability decision is issue preclusive," but only attaches a Form 9 and the order awarding Keever permanent partial disability from her workers' compensation court case. A party relying on a judgment for either issue or claim preclusion defense must incorporate into the record of the current case the complete judgment roll from the earlier case in which the judgment was entered. *See Salazar v. City of Oklahoma City*, 1999 OK 20, ¶ 11, 976 P.2d 1056, 1061.

4. Under "Section V. Record" in Keever's Petition in Error, she marked an "X" next to the statement, "No transcript will be ordered because no record was made and/or transcript will be necessary for this appeal."

medical care, but she was unable to continue working in her previous job" and "Plaintiff was terminated on September 15, 2014, five days after [her] doctor issued his report." The trial court explained "it relied on 85 O.S. § 5(C), the statute in effect at the time of injury," which then provided: [5]

After an employee's period of temporary total disability has ended, no person, firm, partnership, corporation, or other entity shall be required to rehire or retain any employee who is determined to be physically unable to perform assigned duties. The failure of an employer to rehire or retain any such employee shall in no manner be deemed a violation of this section.

¶ 12 Big Lots produced in its evidentiary materials the September 10, 2009 report referenced above written by Dr. Trinidad, who opined Keever has "38% permanent impairment" to the left shoulder as a result of on-the-job injury, "[h]er condition is stable and chronic and maximum medical recovery has been achieved," and "with her current impairment she is unable to continue working in her previous job and should undergo vocational training and placement in a light-duty job." This report alone supports the requirements of § 5(C), i.e., the end of Keever's period of temporary total disability (TTD) and she is physically unable to perform her duties as assistant manager.

¶ 13 When objecting to Big Lots' statement of undisputed material fact regarding Dr. Trinidad's report, Keever does not challenge its content, but argues he "is not and never has been [her] treating physician," he "examined her on one occasion," and his report confirms "she was treated first by her primary care physician, Dr. Little, and then by her orthopedic surgeon, Dr. Painter." In her response brief she further argues "the physician who actually treated her and performed her surgery is in a better position *to determine* her ability to work" and "the fact that one physician, who importantly *never even treated [her]* for her injuries, opined that it was unlikely that [she] would be able to return to her former job is not dispositive of the issue." (Italics added; underline in original.) Keever lastly contends Big Lots "wholly ignores" the release signed by Dr. Painter dated September 9, 2009, indicating Keever is able to return to work without restrictions, which release she included in her attached evidentiary material.

¶ 14 Section § 5(C) does not identify nor has any prior version identified [6] *who* is to determine the employee is physically unable to perform his or her assigned duties, and we find no published Oklahoma cases deciding this precise issue. The clear implication based on the type of the determination is that § 5(C) is satisfied by testimony or report from a physician or other medical expert.[7]

¶ 15 This interpretation is supported by *Bishop v. Hale–Halsell Co., Inc.,* 1990 OK 95, 800 P.2d 232, a retaliatory discharge action in which the trial court granted summary judgment for the employer. Under the facts, the injured employee in *Bishop* saw several physicians over the several months following her injury, she then filed a workers' compensation claim and agreed to a joint settlement of the claim. Two weeks later, the employee returned to work, admitted she had no treatment and no improvement of her condition, and was told she could not return to work without a full duty release form from her doctor indicating she had improved. The em-

---

**5.** "A compensation claim is controlled by the laws in existence at the time of injury and not by laws enacted thereafter." *Williams Companies, Inc. v. Dunkelgod,* 2012 OK 96, ¶ 14, 295 P.3d 1107, 1112. Thus, Keever's 2009 injury is controlled by 85 O.S.Supp 2005 § 5.

**6.** As originally enacted in 1976, the applicable phrase in § 5 was located in the last sentence or proviso that stated "[p]rovided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties."

**7.** Although not raised by either party, Big Lots' evidentiary material also includes the "determination" of Keever's permanent disability by the workers' compensation trial court. We do not address its potential bar on the issue of Keever's inability to perform her assigned duties in this action due to Big Lots' failure to produce sufficient summary judgment record to support issue preclusion. *See* footnote 3.

**236**

ployee obtained the work release to return to original duty, but after giving it to a supervisor, he fired her because she could no longer physically do her work, relying solely on the first physician's report the employee's condition was permanent.

¶ 16 The Court in *Bishop* discussed an employer's burden of production and purposes for such in retaliatory discharge actions and then found:

> [The employer] submitted ample evidence to rebut the inference that the discharge was retaliatory. *All the medical evidence* indicated that the injury and disability were permanent and that continued lifting would likely result in recurrence of the injury. The evidence suggested that [the employee] was unable and would continue to be unable to lift the bags and boxes of produce without experiencing great pain. In essence, [the employee] was unable to fulfill "her assigned duties." [The employee] also produced sufficient evidence to support its claim that this inability to work was the sole reason for terminating [the employee]. (Italics added.)

1990 OK 95, ¶ 8, 800 P.2d at 234.

¶ 17 Contrary to Keever's implied argument that the September 9, 2009 work release from her treating physician, Dr. Painter, controls over or should be given greater weight than Dr. Trinidad's September 10, 2009 medical report, *Bishop* clearly supports consideration by the trial court of all *medical* evidence relevant to the § 5(C) defense that the employee is physically unable to perform assigned duties.

¶ 18 We also find instructive Keever's authority, *Keddington v. City of Bartlesville,* 2002 OK CIV APP 31, 42 P.3d 293, to which she cites for another proposition. In a retaliatory discharge action, the Court of Civil Appeals interpreted a prior version of § 5(C) that did not have the introductory phrase found in its 2005 version, *i.e.,* "after an employee's period of [TTD] has ended." Construing § 5(C) in harmony with § 5's two prohibitions,[8] the Court held "[o]nce an em-

ployee's [temporary total disability] healing period has ended and the employee is *determined* to suffer some permanent physical disability which prevents the discharge of assigned duties for the employer, the employer bears no § 5 liability for then terminating the employee under § 5(C)." *Id.,* ¶ 18, 42 P.3d at 298. Similar to *Bishop,* the evidentiary material presented to the trial court in *Keddington* included two § 5(C) *determinations* of the employee's physical inability to perform assigned duties, *i.e.,* two letters from the employee's physician that he presented to the employer City of Bartlesville prior to his discharge.

¶ 19 After the repeal of the Workers' Compensation Act, the Legislature amended § 5(C), renumbered it to § 341 of the Worker' Compensation Code (WCC), 85 O.S.2011 §§ 301–413. In February 2014, the Legislature repealed the WCC and enacted the Administrative Workers' Compensation Act (AWCA) in Title 85A, again amending and renumbering § 341(C). Where the meaning of a prior statute is in doubt and has not been judicially determined, "a presumption arises that a subsequent amendment was meant to clarify, as opposed to change, the prior statute." *Quail Creek Golf and Country Club v. Oklahoma Tax Commission,* 1996 OK 35, ¶ 10, 913 P.2d 302, 304. The current version of former § 5(C) and § 341(C) retaliatory discharge statutes, 85A O.S.2014 § 7(F), in relevant part, now provides "... an employer shall not be required to rehire or retain an employee *who,* after temporary total disability has been exhausted, *is determined by a physician to be physically unable to perform his or her assigned duties* ..." Despite its numerous repeals and amendments, *etc.,* it is clear the Legislature intended for § 7(F) to clarify the uncertainty and/or implication within all of its former versions. Like in *Bishop,* we conclude Big Lots "submitted ample evidence to rebut the inference" that Keever's discharge was retaliatory.

---

8. As described in *Keddington,* § 5(A) prohibited retaliatory discharges for asserting rights under the Workers' Compensation Act (WCA), and § 5(B) prohibited terminating an employee while receiving WCA authorized TTD due solely to absence from work. Neither section is at issue in this case.

¶ 20 As earlier noted, Keever cites *Keddington* for the proposition that evidence not known to the employer at the time of the employee's discharge will not overcome an employer's liability under 5(C). She contends, "even if [Big Lots] could produce sufficient evidence to determine, as a matter of law, that she is permanently unable to perform the duties of her former position, such evidence did not arise until after [Big Lots] made the decision to terminate her."

¶ 21 Although instructive, we conclude *Keddington* is distinguishable on the facts. Based on its interpretation of § 5(C), the *Keddington* Court found the parties had presented evidentiary materials "demonstrating a termination decision in May of 1999" and, as Keever contends is relevant here, further found "the evidentiary materials also uncontrovertedly showed *then-available* objective facts of *only* Employee's *temporarily* restricted capacity to perform his assigned duties, *not* some *permanent* impairment to the full discharge of his employment functions." (Underline added; italics in original.)

¶ 22 Keever's arguments fail to consider the following evidentiary support and testimony for the trial court's application of § 5(C) in this case: 1) she admits Dr. Trinidad "prepared [the] report at the behest of her attorney with respect to her Workers' Compensation claim"; 2) Dr. Trinidad's September 10, 2009 report establishes the end of Keever's temporary total disability, 35% permanent impairment to her left shoulder, and opines she "is unable to continue working in her previous job and should undergo vocational training and placement in a light-duty job; 3) Dr. Painter's September 9, 2009 one-page "Work/School Release Form," which Keever submitted with her evidentiary materials, states she is "able to return to work without restrictions" but she "will get periodic injections ... to manage *pain*"; and 4) Keever's admissions that the jobs she has held since her termination have not had the same physical or lifting requirements as the assistant manager position she held at Big Lots. (Italics added.)

¶ 23 Keever admits she did not give Dr. Painter's September 9, 2009 work release to Big Lots until a few hours before she was terminated September 15, 2009. Further, her own evidentiary materials uncontrovertedly establish that "sometime *prior* to receiving [that] final work release ... Ken Liberton [Big Lots' representative] made the decision to terminate [her] employment with Big Lots." Therefore, unlike the evidentiary materials presented to the trial court to support summary judgment in *Keddington*, the evidentiary materials in this case show Big Lots' termination decision was based on "then-available objective facts of ... some *permanent* impairment to the full discharge of [Keever's] employment functions."

¶ 24 In affirming summary judgment in favor of the employer, the Court in *Bishop* specifically considered its "holding in *Buckner* [1988 OK 73, 760 P.2d 803], ultimately places the *burden of persuasion* upon the employee to show that they were a victim of retaliatory discharge" and "may succeed in this, either directly by persuading the court the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*, 1990 OK 95, ¶ 9, 800 P.2d at 234. Like the Court in *Bishop*, we conclude Keever "has accomplished neither." *Id.*

¶ 25 The trial court's grant of summary judgment based on § 5(C) is **AFFIRMED.**

MITCHELL, P.J., and JOPLIN, J., concur.